ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error, v.* JOHN A. WHITNEY, *Defendant in Error.*

Opinion Filed Feb. 4, 1913.

1. The views of this court heretofore expressed are repeated, with reference to the proper preparation of bills of exceptions so as to facilitate the work of this court in passing upon the materiality and relevancy of matters excepted to, and also with reference to an unnecessarily large number of assignments of error, and of requested instructions to the jury.

2. In an action for damages for personal injury pain and suffering where the plaintiff's foot was amputated, evidence that he suffered great trouble with the stump of his leg in trying to wear an artificial limb, that his nervous system was injured, and other sufferings, the direct and proximate result of the injury he received, is competent evidence.

3. Where it is not shown that the answer of a witness of plaintiff was injurious to defendant, no error is shown.

4. It is not erroneous for the court to strike out the answer of a witness in which he undertakes to give the understanding of the crew of one train as to the movements of another train. This was merely opinion evidence.

5. The question of permitting a *view* by the jury is one which addresses itself to the discretion of the trial Judge; and to reverse his ruling denying a view it must appear that injury resulted to the party applying therefor.

6. Where an action for damages for personal injury is based on the Employers Liability Acts of Congress of April 22, 1908, and the Safety Appliance Acts of Congress of 1893, and amendments, there is no occasion for the trial judge to charge the jury upon the question of "assumed risks."

7. Where matters discussed in a brief have no relation to the subject-matter of an assignment of error and there are no page references in the record or brief to guide this court in discovering what is intended to be presented, the assignment will not be considered.

8. Where several assignments of error are grouped in the brief of plaintiff in error and one assignment fails, they all fail.

9. When the evidence is conflicting, this court cannot reverse a judgment unless it appears that the jury were influenced by bias, prejudice or other improper motive.

Writ of error to the Circuit Court for Alachua County.

Judgment affirmed.

*R. A. Burford* and *C. R. Layton,* for Plaintiff in Error;

*W. S. Broome* and *A. H. King,* for Defendant in Error.

HOCKER, J.—This case was formerly before this court, and its opinion on reversing the judgment below' is found in 62 Fla. 124, 56 South. Rep. 937. After this a second trial was had on the first count of the declaration alone, as amended since the former trial. The count alleges in substances that the Atlantic Coast Line Railroad Company at the time Whitney was injured was a common carrier in Florida engaged in inter-state commerce by railroad owning, maintaining and operating cars and steam locomotives for the transportation of freight and passengers in Florida, and into other States, a portion of which system extends from the town of High Springs to the City of Gainesville, Florida, through the town of Burnetts Lake therein; that on the 19th of August, 1908, Whitney was employed by the defendant upon and in the operation of one of its passenger trains upon its line aforesaid, and that about noon on Sunday, at Burnetts Lake, being so employed and engaged Whitney, while in the performance of his duties to the railroad company, proceeded to make a coupling between two passenger trains; that the defendant company had failed and neglected to equip the approaching engine so it could be coupled with an automatic coupler, which would couple by impact without the necessity of men going in between the engine and the car to be coupled, as by law' it was required to do; and that while so engaged as aforesaid in making said coupling the plaintiff while attempting to adjust with his hand the knuckle of the

said coupler on the end of the engine to effect the coupling, was thrown down and under the engine whereby he was then and there injured by the defendant, by and through the negligence of the defendant company in using the engine without having it equipped with a coupler which would couple automatically by impact as required by law. By reason of the said negligence of said company it is alleged the plaintiff was thrown between the engine and train, his right foot was crushed, and he was wounded, broken and bruised that his life was despaired of; that then and ever since he has suffered great pain and anguish in body and mind; that his injuries are permanent; that he was rendered incapable of performing his service and duties then and since; that he was obliged to expend large sums of money in endeavoring to have himself cured, to-wit, $500.00, to the damage of plaintiff $25,000.00. The declaration was amended, alleging that the plaintiff and defendant were then and there engaged in interstate commerce, and that the engine was then and there used in connection with such commerce in moving interstate traffic. The foregoing is a summary of the first count of the declaration as amended.

To this count the defendant interposed the plea of not guilty, and a special plea to the effect that Whitney carelessly and negligently attempted to jump on the engine while it was in motion, and in so doing carelessly and negligently placed his foot on the pilot of said moving engine, which slipped and by misstep or otherwise came in contact with the rail below and was run over by the wheel or wheels of said moving engine, which carelessness or negligence on the part of Whitney either caused or contributed to his injuries. On the trial there was a verdict and judgment for the plaintiff for $20,000.00, which the rail-

road company has brought here for review on writ of error.

Fifty-five errors are assigned, the last one being based upon the overruling of the motion for a new trial, which motion itself contains twenty-three grounds. It is true that all of the assignments are not insisted upon, but many of them are and in several instances a number of them are grouped together and we are invited to examine and pass upon all that are so grouped. Again and again we have expressed our disapproval and condemned the practice of assigning a large number of errors and stated why such a course was reprehensible and wherein it tended to hinder, delay and make difficult the administration of justice. We shall not repeat what we have already so frequently said, but content ourselves with referring to the following cases: Seaboard Air Line R. Co. v. Scarborough, 52 Fla. 425, text 431, 42 South. Rep. 706, text 708; Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, text 476, 43 South. Rep. 318, text 341; Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992; Padgett v. State, 64 Fla. 389, 59 South. Rep. 946. Also see the discussion and the authorities cited in the dissenting opinion of White v. State, 59 Fla. 53, text 60, 52 South. Rep. 805, text 807. We would also refer to our discussion in Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, 54 South. Rep. 13, as to the respective duties and relations of the members of the bench and bar and as to the necessity for their cooperation in order that justice may be administered— the purpose for which courts of justice exist. We shall treat such of the assignments as are properly presented to us that we think merit it and that we deem necessary for a proper disposition of the case. Before taking up any of the assignments for consideration we wish to call attention to the fact that we are confronted with the

same· difficulty which we encountered in Rentz v. Live Oak, 61 Fla. 403, 55 South. Rep. 856, and Padgett v. State, *supra*. We refer to the manner in which the bill of exceptions is prepared. For the reasons which we therein pointed out it is difficult, if not in some instances impossible, to intelligently pass upon some of the assignments. We would also refer to what we said in McKinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940, as to the function performed by a writ of error and the duty devolving upon the plaintiff in error. There is yet one other matter which we think should be mentioned. An unnecessarily large number of instructions were requested both by the plaintiff and the defendant. We have also frequently expressed our disapproval of ·this practice and pointed out wherein such course is inadvisable. In addition to the authorities already cited, in some of which this matter is discussed, see Gracy v. Atlantic Coast Line R. Co., 53 Fla. 350, 42 South. Rep. 903; McCall v. State, 55 Fla. 108, 46 South. Rep. 321; Farnsworth v. Tampa Electric Co., 62 Fla. 166, 57 South. Rep. 233; Dunnellon Phosphate Co. v. Crystal River Lumber Co., 63 Fla. 131. text 135, 58 South. Rep. 786, text 788.

The assignments of error from one to twelve inclusive, assignments fifteen and sixteen, as well as assignments seventeen to twenty inclusive, are grouped and argued together by the plaintiff in error, and relate to the admission of what is alleged to be irrelevant testimony. The following question and the answer to it are selected by the plaintiff's attorney as examples and illustrations of the principles involved in these several assignments: The plaintiff was asked this question by his attorney: "After you had left Atlanta, Georgia, please state to the court and jury what the condition of your limb was from time to time." This was objected to and the court was

moved to strike out the answer. The plaintiff, who was about eighteen years old, was on August 19th, 1908, in the employment of the defendant railroad company as Baggage Master and Flagman, and at that time was working on trains between Burnetts Lake and High Springs. He states that in attempting to couple an engine on to another train, by reason of the defective condition of the automatic coupler he had to use his hand, and that somehow his foot slipped from the pilot and the small wheels of the engine ran over his foot. He was taken first to the office of a local physician and afterwards to the Railroad Hospital at Waycross, where his foot was amputated just above the ankle. He was in the Hospital about three months, suffering a great deal all the time. He then went to Atlanta to have an artificial limb made. After it was made, he says, he had a great deal of trouble with the stump of his limb in trying to wear the artificial limb, which he alleges had not healed. In answer to the question he describes the sufferings he experinced from his injured nervous system and the condition of the unhealed stump. It is contended here that this and the like was immaterial evidence which inflamed the minds of the jury and was injurious to the railroad company; that on the former trial the declaration contained counts alleging the incompetency of the railroad surgeons and the malpractice the plaintiff received at their hands which it was alleged caused much of the suffering experienced by the plaintiff subsequent to the injury; that the evidence to support this charge had been held improper by this court on the former appeal, and that afterwards all the counts of the declaration containing such allegations had been abandoned; that there was no allegation in the first count to support the testimony objected to, and that the plaintiff by his

testimony was attempting to get the benefit of the counts which he had abandoned. But we think a sufficient reply to these objections is that the plaintiff nowhere in his testimony on this last trial says anything about any malpractice he may have received. He simply describes the condition of his wounded leg and his sufferings since the injury. It does not appear from the evidence that the bad condition of his injured limb and his sufferings were not the direct proximate result of the injury itself, owing to its peculiar nature. This disposes of these assignments of error.

The twenty-first assignment of error is next discussed. The plaintiff introduced as a witness M. T. Hochstrasser, who qualified as a mathematical expert and was asked this question: "What is the present worth of one dollar per annum to be paid through a period of forty years calculated upon the basis of eight per cent per annum, so that at the end of the period the principal will be totally exhausted?" The witness answered "$11.92½." It is contended that this answer is erroneous and is not the rule for "ascertaining the present worth" of a dollar, referring to Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714; Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876; Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25 South. Rep. 338. In these cases it is laid down that the present value of such items of damage as the plaintiff may be entitled to receive during his life expectancy, etc., are to be reduced to their present value, but what rule is to be followed is not specifically stated. The plaintiff in error offers no demonstration of any error in the answer of the witness, and we do not feel called upon to do so. It is not shown that any injury was produced by the answer. The judge in his charge laid down the rule state in the decisions referred

to in the brief of plaintiff in error, and in Florida East Coast R. Co. v. Lassiter, 58 Fla. 234, text 247, 50 South. Rep. 428, and as was said in Florida East Coast R. Co. v. Lassiter, 59 Fla. 246, 52 South. Rep. 975, and latter part of the opinion, the question of damages was one for the jury to determine from all the evidence.

The twenty-second assignment of error is based on the action of the court in striking out an answer of J. W. Ray, a witness for the defendant. The question propounded solicited from the witness an explanation to the jury how the crew of one train understood a movement in handling another. The witness then proceeded to state certain directions he gave the conductor and to Whitney as to what they were to do, and as to what was to be done by the engineer, and concluded by saying, "Everybody understood it alike." It is contended here that this was entirely opinion evidence, and we agree with this view.

The twenty-third assignment is based on the refusal of the court to permit a witness who it is admitted was not an expert to give his opinion whether a man standing where plaintiff said he stood, on the outside of the heel of the pilot, right hand on lift lever reaching over to adjust the knuckle with his left hand, and his right foot slipping off would go under the wheel of the first truck behind the engine. This testimony was evidently intended to elicit opinion evidence on a material fact and no error was committed by the ruling. Camp Bros. v. Hall, 39 Fla. 535, text 571, 22 South. Rep. 792.

The twenty-fourth assignment relates to the refusal by the court to grant defendant's motion for the jury to view the engine which injured the plaintiff, engine No. 53. It was shown that since Whitney was injured this engine had been in a head-on collision and practical-

ly wrecked, and that it had since been repaired. It was claimed that it was in the same situation as when the accident occurred, but the court below was not disposed to enter into a trial of that question. It is settled in this State that the necessity for a view by the jury is to be determined by the trial court. We cannot say the court erred in refusing the motion. Coker v. Merritt's Executor, 16 Fla. 416.

The twenty-ninth, thirty-first and thirty-second assignments are based on the first, second and third instructions given by the court at the request of the plaintiff below. The only contention in support of these assignments is that the court assumed the existence of facts which were in issue. We think these assignments are unfounded.

The thirty-fourth and thirty-fifth assignments are based on the fact that the court did not instruct the jury on the law of assumed risks. The suit, however, is based on the Employers Liability Act of Congress of April 22, 1908, and the Safety Appliance Acts of Congress of 1893, and amendments, and there was no occasion to instruct on the subject of assumed risks. See Mondou v. New York, New Haven and Hartford R. R. Co., 223 U. S. 1, — Supt. Ct. Rep. —. The Act of Congress is set out *in extenso* in this case, and is held to be constitutional. It is also contended the charges excepted to were erroneous because they required the defendant company to equip and maintain automatic couplers on its engine, whereas the declaration simply charged a fail ure to equip. We think this is too narrow a construction of the declaration and the duty to keep the automatic couplers required by the Safety Appliance Acts of Congress in good and suitable order is affirmed in Southern R. Co. v. Carson, 194 U. S. 136, 24 Sup. Ct. Rep. 609.

The discussion in the brief of the defendant in error of the thirtieth assignment of error has no relation whatever to the subject-matter of the assignment. There may be some mistake in the brief, but there are no page references to the record in 'the brief, or other means presented by which we could easily discover what is intended to be presented. This practice if it were tolerated would impose undue labor on the court especially where there are long records and many assignments. Jacksonville, T. & K. W. Ry. Co. v. Griffin, 33 Fla. 602, text 606, 15 South. Rep. 336.

Assignments forty-one, forty-two, forty-three and forty-four are grouped in the brief of the plaintiff in error. The first of these is based on the refusal of the court to instruct the jury on the law with reference to risks assumed by the defendant in error. This suit is brought under Employers Liability Act of Congress, and facts were proven establishing that fact. Under this act the doctrine of assumed risks is abolished. This assignment failing, we are not required to consider those grouped with it, though they must fail for the same reason.

Assignment fifty-five is based on the refusal of the court to grant the motion for a new trial. The first, second and third are the only grounds presented here. They are, first, the verdict of the jury is contrary to the law and charge of the court; second, because the verdict is contrary to the evidence, against the weight of the evidence and without sufficient evidence to support it; third, because the verdict of the jury is excessive. Upon many material matters the evidence was conflicting, but following the rule of this court we can not say that the jury were influenced by bias, prejudice or improper motives. It was their province to determine upon conflicting evidence. The question of the excessiveness of a ver-

dict is always a delicate one for a court of final resort, and especially where in a former trial a similar verdict to the one here was returned on practically the same facts. In Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44, this court said: "When the trial court concurs in a verdict rendered by a jury by denying the motion for a new trial, and there is evidence to support it, an appellate court should refuse to disturb it, in the absence of any showing that the jurors must have been improperly influenced by consideration outside of the evidence." Idem. p. 284. In Wilson v. Dibble, 14 Fla. 47, this court said a new trial should not be granted unless the preponderance is such as to warrant the opinion that the verdict was produced by improper influences, and particularly where two juries have rendered the same verdict upon the same state of facts. Also see Valdosta Mercantile Co. v. White, 56 Fla. 704, 47 South. Rep. 961. Atlantic Coast Line R. R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761, which was also an action brought by an employee against the railroad company to recover damages for personal injuries alleged to have been caused by the negligence of the company, is well in point. We held therein that "where one of the grounds in the motion for a new trial is that the amount of the verdict is excessive, and the trial court has denied such motion, in passing upon an assignment predicated thereon, an appellate court will not disturb the verdict on such grounds, unless the amount is such as to shock its judicial conscience or as to indicate that the jury must have been unduly influenced in some way, or swayed by bias, passion or prejudice." Also see the discussion therein of such point and the authorities cited.

There can be no scientific rule laid down governing the amount which a jury may give in a case like this

which involves the question not simply of earning capacity, but of pain and suffering. Unless the Legislature shall fix by law the limits of recovery, as has been done in some States, the matter must be left largely to the jury.

Finding no reversible error in the record, the judgment below is affirmed. .

SHACKLEFORD, C. J., AND TAYLOR AND COCKRELL, J. J., concur.

WHITFIELD, J., considers the verdict excessive.