BEN SMITHIE, ALIAS BENNIE SMITHIE, *Plaintiff in Error,*
v. STATE OF FLORIDA, *Defendant in Error.*

## Division A.

## Opinion Filed June 13, 1924.

1. Section 28 of Article III of the Constitution, which, among
   other things, provides that when the Legislature presents a
   bill that has passed that body to the Governor for his
   approval it shall become a law if not returned by the
   Governor within five days after it shall have been presented
   to him (Sunday excepted) and that "If the Legislature, by
   its final adjournment, prevent such action, such bill shall
   be a law, unless the Governor, within ten days after the ad-
   journment, shall file such bill, with his objections thereto,
   in the office of the Secretary of State, who shall lay the
   same before the Legislature at its next session. and if the
   same shall receive two-thirds of the votes present it shall
   become a law," intervening Sundays are counted as part of
   the ten days time after adjournment of the Legislature in
   which the Governor may consider the bill and approve or
   disapprove it.

2. A bill which had passed the Legislature was presented by
   that body to the Governor on June 3, 1921. On that day the
   Legislature adjourned *sine die.* On June 14, 1921, the
   Governor sent the bill with his objections thereto to the
   Secretary of State who filed the same. The intervening 5th
   and 12th of June came on Sundays. Held: That more than
   ten days expired between the final adjournment of the Legis-
   lature and the date when the Governor sent the bill to the
   Secretary of State with his objections and that the bill be-
   came a law without the Governor's signature.

3. A bill properly enacted by the Legislature becomes a law
   without the Governor's express approval unless he vetoes the
   same within the time limited by the provisions of Section
   28 of Article III of the Constitution.

4. In the computation of time within which an Act is required to be done the rule, in the absence of statutory expression to the contrary, is that intervening Sundays which fall on neither the first nor last day are to be computed and that if the Act is required to be done within a certain number of days exceeding a week Sundays are not excluded from the computation, but if the number of days is less than seven Sunday is not counted.

5. A statute which requires the judge in criminal trials to charge the jury immediately upon the conclusion of the evidence does not prescribe a hard and fast rule a divergence from which constitutes of itself reversible error but merely secures to the defendant a right which he may waive if he desires.

6. Upon a writ of error where there is an assignment of error based upon the order of the trial court overruling a motion for a new trial upon the ground that the verdict is not sustained by the evidence where the motion for a new trial and the order overruling it are not included in the bill of exceptions this court will not consider the assignment of error.

7. Where assignments of error are grouped in the brief of counsel for the plaintiff in error if one assignment fails they all fail.

8. In the trial of an indictment for murder evidence tending to show motive or cause for an antagonism between the two men is admissible as against the defendant.

9. In the trial of an indictment for murder evidence tending to show an illegitimate intimacy between the defendant and the sister-in-law of the deceased, who provided a home for her and stood somewhat in the position of parent to her is admissible against the defendant to show the relation of the two men to each other and to explain previous threats made by the defendant and why he went armed.

10. In the trial of an indictment for murder evidence which is admissible against the defendant to establish a motive for

the commission of the criminal offense with which he is charged and upon which he is being tried is not rendered inadmissible merely because it also tends to prove that he had been guilty of another crime.

A Writ of Error to the Circuit Court for Lafayette County, M. F. Horne, Judge.

Judgment affirmed.

*W. P. Chavous* and *J. M. McKinney,* for Plaintiff in Error.

*Rivers Buford,* Attorney General, and *Marvin C. McIntosh,* Assistant, for the State.

ELLIS, J.—The plaintiff in error, hereinafter called the defendant, was indicted for the murder, on March 9, 1922, of L. T. Walker in Lafayette County and was convicted of the crime of manslaughter. He seeks to reverse the judgment because of errors alleged to have been committed by the trial court in overruling objections by him to the admission of certain evidence and in requiring the attorneys to make their arguments to the jury upon the merits before the court delivered its charge.

Section 2696 of the Revised General Statutes, relating to charges to juries on the law of the case and direction of verdicts, was amended by Chapter 9364 which appears in the printed Acts of 1923. The amendment contains the following provision: "That at the trial of any criminal prosecution or civil action or proceeding at law in the courts of this State, the Judge presiding shall charge the jury on the law of the case in the trial at the conclusion of the evidence and before argument of counsel."

The history of this legislation is as follows: The act originated in the House during the session of 1921 and was

known as House Bill No. 50. It did not contain the above quoted clause as it was introduced and passed in the House on April 26th. On May 25th it was amended in the Senate by the addition of the clause above quoted and passed that body as amended. On June 2, 1921, the House concurred in the Senate amendment; no record of the yea and nay vote being made then nor entered on the journal. Such procedure, however, has been held to be valid and in compliance with the Constitutional requirement that the vote on the "final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each House", Sec. 17, Art. III, Constitution. See State ex rel. Lamar v. Dillon, 42 Fla. 95, 28 South. Rep. 781.

The bill as passed was enrolled and signed and sent to the Governor on June 3, 1921, and on that day the Legislature adjourned. The term had expired by limitation of time prescribed by the Constitution. On June 14, 1921, the Governor filed the bill with his objections thereto in the office of the Secretary of State.

The Act was not printed in the volume of printed laws of the legislative session of 1921 but was printed in the volume of legislative Acts of 1923 as Chapter 9364 together with the objections made to it by the Governor.

Section 28 of Acticle III of the Constitution is as follows: "Every bill that may have passed the Legislature shall, before becoming a law, be presented to the Governor; if he approves it he shall sign it, but if not he shall return it with his objections to the House in which it originated, which House shall cause such objections to be entered upon its journal, and proceed to reconsider it; if, after such reconsideration, it shall pass both Houses by a two-thirds vote of the members present, which vote shall be entered on the journal of each House, it shall become a law. If

any bill shall not be returned within five days after it shall have been presented to the Governor (Sunday excepted), the same shall be a law, in like manner as if he had signed it. If the Legislature, by its final adjournment, prevent such action, such bill shall be a law, unless the Governor, within ten days after the adjournment, shall file such bill, with his objections thereto, in the office of the Secretary of State, who shall lay the same before the Legislature at its next session, and if the same shall receive two-thirds of the votes present it shall become a law."

As the Governor filed the bill, together with his objections, in the office of the Secretary of State after the expiration of ten days and not within ten days, after the adjournment of the Legislature, the bill became a law several hours before his objections were filed if the intervening Sundays are to be counted. Between the 3rd of June, 1921, and the 14th day of that month two Sundays intervened, viz: the 5th and 12th of June. If the two Sundays, the 5th and 12th, are eliminated from the count then only eight days and a few hours elapsed after the Legislature adjourned before the Governor filed the bill with his objections in the office of the Secretary of State.

Neither the 5th nor the 12th of June, 1921, occurred at the beginning nor the end of the ten days which elapsed after the Legislature of 1921 adjourned *sine die*.

Under the provisions of Section 28 of Article III of the Constitution, above quoted, a statute properly enacted by the Legislature, unless expressly vetoed by the Governor within the time limited by the provisions of the quoted section of the Constitution, becomes as valid a law without the Governor's express approval as though he had affirmatively approved it. See Atlantic Coast Line R. Co. v. Mallard, 53 Fla. 515, 43 South. Rep. 755.

It is a general rule though perhaps not universal "that,

in the absence of statutory expression of a contrary intent, intervening Sundays, that is, Sundays which fall on neither the first nor last days, are to be included in computing a period of time." Sec. 38 Cyc. 332; Swift & Co. v. Wood, 103 Va. 494, 49 S. E. Rep. 643; Drake v. Fletcher, 50 N. C. 410; State v. Green, 66 Mo. 631; Craig v. United States Health & Accident Ins. Co., 80 S. C. 151, 61 S. E. Rep. 423; Atchison, T. &. S. F. R. Co. v. Solorzano, 21 N. M. 503, 156 Pac. Rep. 242, Ann. Cas. 1917 E. 950; 26 R. C. L. 753; Notes 6 Ann. Cas. 717; State ex rel, State Pharmaceutical Assn. v. Michel, 52 La. Ann. 936, 27 South. Rep. 565, 78 Amer. St. Rep. 364, 49 L. R. A. 218.

The rule is very generally recognized as stated in State v. Michel, *supra*, that when an act is required to be done in a certain number of days exceeding a week, Sunday is not excluded from the computation, but if the number of days is less than seven Sunday is not counted. See Salley v. Seaboard Air Line Ry., 76 S. C. 173, 56 S. E. Rep. 782; Atchison, T. & S. F. R. Co. v. Solorzano, *supra*; Capito v. Topping, 65 W. Va. 587, 64 S. E. Rep. 845, 22 L. R. A. (N. S.) 1089.

Section 28 of Article III of the Constitution allowing the Governor five days within which to exercise the veto power while the Legislature is in session expressly excludes Sunday. Some courts hold that where the same number of days after adjournment is allowed in which to veto an act as is allowed while the Legislature is in session and Sunday is excluded in reckoning the time in the latter case, it is also excluded in reckoning the time in the former. See People ex rel. Akin v. Rose, 167 Ill. 147, 47 N. E. Rep. 547; Capito v. Topping, *supra*; State ex rel. State Pharmaceutical Ass'n. v. Michel, *supra*; Stinson v. Smith, 8 Minn. 366.

But the Constitution of Florida in the same section but

in a different sentence allows a longer time after the Legislature adjourns in which the Governor may exercise the veto power but omits any reference to Sunday. The conclusion is almost compelling that in the one instance the framers of the Constitution desired that Sunday should be excluded from the computation of time and in the other that it should not. In the latter case where the Legislature sends a bill to the Governor for his approval and adjourns just before the expiration of five days from that date the reckoning of time begins from the adjournment. So the Governor would have, in that case, fourteen days instead of ten from the date the bill was presented to him in which to exercise the veto power. This consideration taken in connection with the rule generally applied and which had been applied in several states when our Constitution was adopted that when greater time than a week was allowed for the doing of an act Sundays were included it would seem most reasonable that such was the purpose of the framers of the Constitution. See State *ex rel.* Watkins vs. Norton, 21 N. D. 473, 131 N. W. Rep. 257.

Our conclusion therefore is that the Act became a law on the 13th day of June, 1921, and that the Governor's objections to it were filed too late. The contention of the Attorney General that the Act does not apply because the alleged crime was committed before the Act became a law is incorrect. The law was in effect when the alleged crime was committed.

The Act made an important change in the procedure of criminal trials. The Judge's charge following immediately upon the conclusion of the evidence may enable the jury to obtain a clearer and more accurate conception of their duties in the particular case than if they were required to wait until after the argument of counsel to hear the law of the case from the judge. Upon the other

hand the defendant may regard the impression which eloquent and able counsel speaking in his behalf may make upon the minds of the jury as of more value to him in the emergency. In any case we regard the statute not as prescribing a hard and fast rule, any divergence from which constitutes of itself reversible error, but as securing to the defendant merely a right which he may waive if he desires. There is nothing in the bill of exceptions to show that there was any exception taken by the defendant to the procedure adopted by the court. There is therefore nothing upon which to base the assignment of error.

The evidence we think is ample to support the verdict of the jury. A discussion of it would be of no benefit. While the defendant's account of the transaction might, if believed by the jury, have warranted an acquittal his story taken in connection with the testimony of the witness who told of his threats against the deceased and the demonstration he made with a pistol against him a short while before the killing was sufficient to warrant the conclusion that in firing the shot at the man, who was anxious about the results of his sister-in-law's association with the defendant, who was a married man, the defendant was not altogether free from a criminal intent. The motion for a new trial however and the order overruling it are not included in the bill of exceptions. This Court, therefore, would not consider an assignment of error based upon the probative force of the evidence. See Schmids v. Tampa Pub. Co., 72 Fla. 571, 73 South. Rep. 593; Florida Power Co. v. Cason, 79 Fla. 619, 84 South. Rep. 921; Andrews v. State, 65 Fla. 377, 61 South. Rep. 975.

The eleventh and twelfth assignments of error are therefore not well taken. There is no basis in the record for the assignment of error numbered two because the question to which objection was interposed was not answered and

the answer to the following question, which may have been the cause for defendant's objection, was stricken by the court. Assignment numbered one, which is discussed with assignment number two, is without merit. It was a perfectly legitimate inquiry to make of the witness as to whether the defendant was married or a single man.

The remaining assignments of error are discussed together. They are numbered from three to ten inclusive and are grouped in the brief of counsel for the plaintiff in error. If one assignment, therefore, fails they all fail. See Atlantic Coast Line R. Co. v. Whitney, 65 Fla. 72, 61 South. Rep. 179; Hall v. State, 78 Fla. 420, text 434, 83 South. Rep. 513.

The wife of the deceased was a witness for the State. She had been taking care of her sister, Ruby Humphreys, ever since the girl was a baby of five weeks old. At the time of the shooting that girl was within a few days of being seventeen years of age. The people in the house of the deceased were preparing to. go to a neighbor's house, that of Oscar Walker who was sick, and sit up with him. The defendant borrowed the automobile of the deceased to ride over to the former's home for supper. When the defendant left the girl went away in about thirty minutes.

The witness was asked to repeat the statement as to the departure from the house by the defendant and the girl. She replied: "It was about a half or three quarters of an hour." No motion was made to strike this answer. The witness was asked if her sister came back that night. This question was objected to and objection was overruled and exception taken. The answer was neither affirmative nor negative. It was: "not that I seen". The next question was: "Do you know where your sister went when she left your house that night?" There was an objection which was overruled and an exception; but the

answer of the witness was harmless. It was: "No, sir I do not know where she went until late that night; she went to Bud Severance's so they said." The Court on defendant's motion struck out what the witness said about her sister's going to Severance's.

The next question propounded to the witness was: "Did your husband say anything to her about Smithie that night?" There was an objection overruled and exception taken. The witness answered: "Yes, sir." She was then asked if her sister resented what the deceased said to her to which there was objection and exception. Her reply was in the affirmative. The witness was then asked if she tracked her sister that night after she left the house. There was also objection and exception and she replied that she did and saw where she got in the car. She then testified, over defendant's objection, that there was "an intimacy between her sister" and the defendant, Ben Smithie, and that the girl's leaving that night worried the deceased and "he cried about it."

Some of the evidence obtained by the above questions was relevant and perfectly proper as showing motive or cause for an antagonism between the two men; and some of it was perfectly harmless and, although, technically inadmissiable could not be said to be productive of harm. It all tended to show an illegitimate intimacy between the defendant and the sister-in-law of the deceased, who stood somewhat in the position of parent to the girl. It showed the relation of the two men to each other and partially, if not entirely, explained the threat of the defendant and why he carried a pistol. According to one witness the defendant, ten days before the killing, threatened to make the deceased "eat the contents" of a pistol. See 6 Ency. of Evidence 627-628-653; State v. Reed, 53 Kan. 767, 37 Pac. Rep. 174, 42 Am. St. Rep. 322; People v. Brown, 130

Cal. 591, 62 Pac. Rep. 1072; Sullivan v. State, 100 Wis. 283, 75 N. W. Rep. 956.

The fact that the evidence also tended to show the defendant to be guilty of another crime, that of criminal intimacy with a girl not eighteen years of age, would not render it inadmissible as evidence of so important an element as motive for the killing of the deceased. ''Whatever fact tends legitimately and fairly, according to the ordinary operation of the human mind, and the ordinary principle of human conduct, to show motive, may properly be given in evidence, in proof of any assumed motive for the commission of crime.'' See People v. Stout, 4 Park. Cr. Rep. (N. Y.) 128 text.

There is no error apparent in the record so the judgment is affirmed.

TAYLOR, C. J. AND WEST, J. Concur.

WHITFIELD, BROWNE AND TERRELL, J. J., Cnocur in the conclusion.