407 So.2d 198 (1981)
William D. CHRISTOPHER, Appellant,
v.
STATE of Florida, Appellee.
No. 55698.
Supreme Court of Florida.
December 10, 1981.
*199 Jack O. Johnson, Public Defender and James R. Wulchak and David A. Davis, Asst. Public Defenders, Bartow, for appellant.
Jim Smith, Atty. Gen. and James S. Purdy, Asst. Atty. Gen., Tampa, for appellee.
ADKINS, Justice.
We have before us a direct appeal from a judgment imposing the death sentence upon William D. Christopher. Jurisdiction is pursuant to article V, section 3(b)(1), Florida Constitution.
The appellant was found guilty on two counts of first-degree murder. The findings of fact by the trial court are as follows:
The defendant was charged and found guilty of the First Degree Murder of George Ahern and of the First Degree Murder of Bertha Skillin. The jury recommended to the Court in its advisory opinion that the Court impose a sentence of death. The Court is hereby accepting the advisory opinion of the jury and is hereby imposing a sentence of death upon William D. Christopher.
The Court finds that there are sufficient aggravating circumstances to impose the death penalty and there is [sic] insufficient mitigating circumstances to support a sentence of life imprisionment [sic]. The court finds that the aggravating circumstances were:
1. The defendant was previously convicted of other felonies involving the use of violence to some person. In fact, as much as can be determined from the pre-sentence investigation, it appears that the defendant has been convicted of a great many felonies that did not invoke [sic] the use of force. However, pursuant to the applicable statute, the Court has only considered the felonies involving the use of violence to a person.
On June 19, 1972 in Memphis, Tennessee the defendant, William D. Christopher, was convicted of (1) assault with intent to commit murder in the first degree and, (2) attempt to commit felony (Rape) along with a non-violent felony... .
2. The two capitol [sic] felonies that were commited [sic] by the defendant, William D. Christopher, are especially heinious [sic], atroscous [sic] and cruel. The defendant had a duaghter [sic], Norma Sands, who was born out of wedlock to defendant and Patricia Sands Stock. At the time of the birth of the illegitimate child, the defendant was in prison, so the mother gave the infant up for adoption to one of the murder victims, Bertha Skillin and her husband. Bertha Skillin and Norma moved to Florida and the child was reared in this state. The defendant first met his 14 years [sic] old daughter in December 1975 in Memphis, Tennessee while Norma was in that city for a visit. On approximately the first of August, 1976, the defendant arrived in Naples, Florida and made contact with his daughter, Norma. The defendant was without funds. One of the murder victims, Bertha Skillin and the other murder *200 victim, her boyfriend, George Ahern, invited the defendant to stay in their apartment. Soon the defendant and his daughter, Norma, were engaged in a sexual affair. Mrs. Skillin discovered that Norma was planning to leave Naples and return to Memphis, Tennessee with the defendant. Mrs. Skillin confronted the defendant on the day of the murders and attempted to call the police. The defendant then killed her with a pistol, and then dragged her body into the bathroom and closed the door. During this time, George Ahern was fishing. He returned to the apartment and the defendant persuaded George Ahern to withdraw $300.00 from his bank account so the defendant could return to Memphis. They went to the bank, withdrew the money and returned to the apartment. When they returned to the apartment the defendant knocked Mr. Ahern down. Mr. Ahern ran for the bedroom and attempted to shut the door. The defendant pushed open the door and shot the victim while [he] was sitting on the bed. The defendant and his daughter then fled to Tennessee where he was apprehended. After apprehension, he confessed to both murders... .
Appellant presents six procedural issues upon which he relies for reversal of the sentence of death, remand for a new trial, remand for imposition of a life sentence, or remand for a new sentencing hearing.
The six issues presented for our consideration are as follows:
1. Did the trial court systematically exclude for cause prospective jurors who did not state they were irrevocably committed to vote against the death penalty, but voiced only general, indefinite reservations to capital punishment, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and article I, sections 9 and 16 of the Florida Constitution?
2. Did the trial court err in admitting appellant's confession because (a) he did not freely and voluntarily confess, and (b) the police failed to honor his request to cut-off questioning, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and article I, section 9, of the Florida Constitution?
3. Did the trial court commit reversible error in allowing over defense objections and a motion in limine, testimony regarding the sexual relationship between the appellant and his daughter?
4. Did the trial court err in denying appellant's motion for a medical evaluation and for administration of sodium pentothol at county expense?
5. Did the trial court's granting of the state's motion to preclude the appellant from introducing evidence of his polygraph test render the death sentence unconstitutional?
6. Were the aggravating factors found by the court improper; should mitigating factors have been found; and did the mitigating factors outweigh the aggravating factors?
As to the first issue, the law is settled that the competency of a challenged juror is a mixed question of law and fact and is to be determined by the trial judge in his discretion. Manifest error must be demonstrated before the judge's decision will be disturbed. Singer v. State, 109 So.2d 7, 22 (Fla. 1959); Ashley v. State, 370 So.2d 1191, 1194 (Fla.3d DCA 1979). No such error has been demonstrated in the case sub judice.
Turning to the second issue, the admissibility of the confession, we find no evidence that the appellant exercised his right to halt the interrogation. The appellant continued his conversation with the interrogating deputies of his own free will.
The test for admissibility of a confession is whether it is freely and voluntarily made. Howell v. State, 66 Fla. 210, 63 So. 421 (1913); Jarriel v. State, 317 So.2d 141 (Fla. 4th DCA 1975), cert. denied, 328 So.2d 845 (Fla. 1976).
Appellant claims improper coercion during the course of the interrogation. A case in which improper coercion was found is Jarriel v. State, cited above. In Jarriel the defendant was improperly urged by direct *201 or implied promises to make a statement. The interrogating officer told defendant his wife would be arrested unless defendant made a statement. 317 So.2d at 141. No such urging or promising took place in the case sub judice. The confession was freely and voluntarily made, and was, therefore, properly admitted.
Next we proceed to the third issue, concerning the admissibility of the testimony regarding the appellant's sexual relations with his daughter. Appellant's claim is that the prejudicial impact of this evidence far outweighs its probative value, and therefore, the evidence should not have been admitted. We disagree. The trial judge found that incest was one of the theories upon which the state tried the case and that incest was a motive for the murders. The state contended that the primary reason for the murders was appellant's jealousy and anger over Ahern's sexual advances toward Norma. Appellant knew that Ahern had fondled Norma's breasts and that he had entered Norma's room at night and lifted her covers to see if she was naked. The state also contended that the abnormal relationship between appellant and his daughter was why he planned on taking Norma away from Naples, and that the plan resulted in two murders because Skillen tried to prevent Norma's departure by calling the police. It is well-established that "any material evidence tending to show motive is admissible on the trial of one charged with the offense of murder in the first degree... ." Beard v. State, 131 Fla. 512, 180 So. 1, 2 (1938). See also, McVeigh v. State, 73 So.2d 694, 696 (Fla.), appeal dismissed, 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696 (1954); and Dodson v. State, 334 So.2d 305 (Fla. 1st DCA 1976), cert. denied, 341 So.2d 1081 (Fla. 1977).
In Smithie v. State, 88 Fla. 70, 101 So. 276 (1924), a first-degree murder case, this Court held that certain evidence which tended to show an illegitimate intimacy between the defendant and the sister-in-law of the deceased, was admissible. The Court found that "some of the evidence obtained ... was relevant and perfectly proper, as showing motive or cause for antagonism between the two men... ." 101 So. at 279. The Court further determined that "[t]he fact that the evidence also tended to show the defendant to be guilty of another crime, that of criminal intimacy with a girl not 18 years of age, would not render it inadmissible as evidence of so important an element as motive for the killing of the deceased." Id.
The testimony concerning appellant's sexual relations with his daughter was admissible.
We turn now to the fourth issue on appeal, whether the trial court, during the sentence proceeding, erred in denying the appellant's motion for a medical evaluation and for administration of sodium pentothol at county expense. We consider this issue in light of this Court's pronouncement in the case of Knight v. State, 97 So.2d 115, 118 (Fla. 1957).
There is no scientifically recognized drug that inevitably causes its subject to speak the truth. The so-called "truth serums", including ... sodium pentothol, are said to affect states of altered consciousness, so that the subject's ability to associate thoughts and give them inhibited expression is impaired; but no such drug insures pure truth. It is said to produce merely an uninhibited state of mind in which the subject is prone to relate facts not deliberately altered. In 5 University of Florida Law Review 6 (1952) it is said:
Along with those facts, however, fantasy unfolds; and here lies one of the greatest objections to the accuracy of the truth serum. Since the truth is mixed with impressionistic creations peculiar to the subject, the reliability of any truth serum testimony will depend mostly upon the examiner's interpretive skill and experience. Without such experts, therefore, there is not even a scientific acceptance of the serum's reliability. Moreover, in order for truth serums to bridge the experimental-demonstrable gap, there must be a showing that while the subject is under the influence of such drugs there *202 can be no intentional fabrication. The courts so far have indicated a distrust for the assertion that the subject has no control over his utterances by regarding statements made under influence of the drug as merely self-serving declarations.
The trial court, in the case sub judice, made the following findings:
THE COURT: All right. The Court is of the opinion that sodium pentothol comes under the same rules as polygraph examination. It's not admissible. The only time it is admissible in the trial is when both sides would agree to it being considered by a jury.
Due to the fact that it's not admissible, it's not material to the trial, and the Court is not going to require the county to pay for such an examination knowing in advance that it's not going to be admitted at the trial. Therefore, the Court is going to deny your motion.
Now this is not to say if you do want to make a proffer you may not do so, but any funds expended on such a test will have to come from the defendant or from the public defender's office.
Now, the Court is going to deny this motion. Now, in the event that we go into a penalty phase trial, the Court will hear further from you as to how it could be presented for the Court to make a decision in the case.
The judge acted properly. Appellant's fourth point is without merit.
We now consider the fifth issue, whether the trial court erred during the sentencing in granting the state's motion to preclude the introduction of polygraph results. Section 921.141, Florida Statutes (1977), is not ambiguous with respect to what evidence is admissible at the sentencing hearing. The statute provides that evidence as to any matter the court deems relevant to sentencing may be admitted. It is within the discretion of the trial court to determine what is relevant in the sentencing proceeding. Provence v. State, 337 So.2d 783, 786 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Absent a showing of abuse of this discretion we will not disturb the finding of the trial judge. No such abuse has been shown in the case sub judice. The granting of the state's motion to preclude the introduction of the polygraph results was proper.
We now reach the final issue on appeal, the sufficiency of the trial court's findings with respect to aggravating and mitigating factors. The first aggravating factor found by the trial court is that the defendant was previously convicted of other felonies involving the use of violence to some person. Documents introduced by the state demonstrated that he was convicted for assault with intent to commit murder in the first degree, and for an attempt to commit rape. In addition, the appellant admitted the crime of assault with intent to commit first degree murder in one of his taped confessions. Furthermore, the pre-sentence investigation report ordered by the trial judge reflected a conviction for assault with intent to commit first degree murder, and a conviction for attempted rape. Appellant's challenge to this finding is without merit.
The second aggravating factor found by the trial court is that the murders were heinous, atrocious, or cruel. The facts support this finding. The appellant was in Naples to visit his daughter. He had no money and no place to stay. Bertha Skillen and George Ahern invited appellant to stay in their apartment. When Mrs. Skillen discovered that Norma was planning to leave Naples with the appellant she attempted to call the police. Appellant shot and killed Skillen at that time. Shortly after this Ahern returned to the apartment. He and Christopher went to the bank so that Ahern could give Christopher some money. When they returned to the apartment Christopher knocked Ahern down. Ahern then ran for the bedroom and tried to shut the door. Christopher pushed open the door and shot Ahern while Ahern was sitting on the bed.
It is common knowledge that discretion and judgment are essential to the judicial process and are present at all stages of its progression  arrest, arraignment, trial, verdict, *203 and onward through final appeal. State v. Dixon, 283 So.2d 1, 6 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Judicial discretion in the context of the sentencing statute, section 921.141, Florida Statutes, must be reasonable and controlled, rather than capricious and discriminatory. Id. at 7. The discretion exercised by the trial judge in entering a sentence of death was reasonable and controlled, as required in Dixon.
We also held in Dixon that when one or more aggravating circumstances are found, the death penalty is presumed proper unless the aggravating circumstance or circumstances are overridden by one or more of the mitigating circumstances. 283 So.2d at 9. In the instant case it does not expressly appear from the specific findings of fact that the trial judge found the existence of any mitigating circumstances. Indeed, his written findings expressly negate the existence of any mitigating circumstances.
The findings of the trial court are supported by the facts and testimony in the record. No reversible error has been demonstrated. We therefore hold that the judgment and sentence of death upon the appellant, William D. Christopher, are affirmed.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in the result only.
ENGLAND, J., dissents.