414 So.2d 518 (1982)
Ernest John DOBBERT, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. 61732.
Supreme Court of Florida.
May 13, 1982.
*519 Patrick D. Doherty of Gross & Doherty, Clearwater, for petitioner.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for respondent.
ALDERMAN, Justice.
Ernest John Dobbert, Jr. seeks leave to file a petition for writ of error coram nobis on the basis that he was convicted of the first-degree murder of his daughter, Kelly Ann Dobbert, and was sentenced to death solely upon the false testimony of his son, Ernest John Dobbert, III, and that the untruthfulness of this testimony was not discovered until February 5, 1982, and could not have been discovered at the time of trial through the use of due diligence. Finding that Dobbert has failed to establish prima facie grounds for the relief requested, we deny his petition.
Dobbert, in April 1974, was convicted of the first-degree murder of his nine-year-old daughter. His conviction and his sentence of death were affirmed by this Court and by the Supreme Court of the United States. Dobbert v. State, 328 So.2d 433 (Fla. 1976), aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Later, finding a Gardner[1] violation, we relinquished jurisdiction to the trial court with directions to vacate the death sentence and to give Dobbert an opportunity to respond to a presentence investigation report which had been furnished to the trial court when he first sentenced Dobbert to death but which had not been made available to him. The trial court, after a plenary resentencing hearing, again sentenced Dobbert to death. We affirmed, and the Supreme Court of the United States denied certiorari. Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). Dobbert was scheduled to be executed on July 22, 1981, but the Supreme Court stayed execution pending its disposition of a writ of certiorari in Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, ___ U.S. ___, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). He was again scheduled to be executed on February 2, 1982. The day after Governor Graham signed his death warrant, Dobbert filed a motion to vacate his death sentence which was denied by the trial court. We affirmed the trial court's denial and denied the stay of execution. Dobbert v. State, 409 So.2d 1053 (Fla. 1982). The United States Circuit Court of Appeals, Eleventh Circuit, however, granted Dobbert's request for a stay.
Dobbert has now filed a request for leave to file a petition for writ of error coram nobis claiming that his son, Ernest John Dobbert, III (John), the State's key witness against him, has now come forward and admitted that certain statements he had made at trial concerning the manner in which Kelly died are false. Dobbert alleges that neither he nor his attorneys were aware of his son's willingness to come forward until February 5, 1982, and that his son was unwilling to reveal the untruthfulness prior to January 31, 1982. In an affidavit and videotaped statement submitted with this petition, John says that, in response to the state attorney's question during trial as to whether Dobbert did anything to Kelly the night before she died, he answered yes and that his father had kicked her. He now asserts that this answer was false and that the correct answer to this question was no and that he had done nothing to her the night before she died. Rather, he had kicked her weeks before she died. The affidavit further states that, in response to the question of whether Dobbert did anything to Kelly the night she died, he answered during trial that Dobbert had *520 choked her while in fact the correct answer was no. John says that his father did not choke Kelly, that she died accidentally choking on food or vomit, and that his father tried to give Kelly mouth-to-mouth resuscitation.
We directed the State to respond to Dobbert's petition by order entered February 17, 1982. The State responds that this alleged new evidence would not have precluded judgment, that there is no allegation that John was coerced by the State in testifying as he did at the trial, that the videotaped statement and affidavit are suspect because the language utilized is not indigenous to the speech pattern of John, and that the statements now asserted to be the truth are not new evidence.
We agree with the State's last contention that the petition should be denied on the basis that the evidence submitted by petitioner is not new evidence. In Hallman v. State, 371 So.2d 482 (Fla. 1979), we summarized the requirements which must be met by a defendant who seeks coram nobis relief. One important prerequisite which must be demonstrated before an appellate court will grant leave to proceed in the trial court is that the facts alleged must not have been known by the court, by the party, or by his counsel at the time of trial. It must also be made clear that defendant or his counsel could not have discovered them through the use of due diligence. See also Smith v. State, 400 So.2d 956 (Fla. 1981). We cannot say that the facts alleged in Dobbert's petition as a basis for relief were unknown at the time of trial. Dobbert's claim that this different version of Kelly Dobbert's death now disclosed by John in his affidavit and videotaped statement was not known to him or his defense counsel is refuted by a sworn statement made by John to investigators and officers of the Jacksonville sheriff's office. That Dobbert, through his counsel, had knowledge of this earlier statement is evidenced by his counsel's March 5, 1974, deposition of John and his counsel's questions on cross-examination of John during the trial.
The transcript of the sworn statement made to authorities in the sheriff's office reveals that in April 1972, two years prior to trial, John made a statement remarkably similar to the one he makes in his present affidavit. In this early statement, John stated that Kelly was not kicked the night before she died, that the last time Dobbert beat her or whipped her was a week before she died at which time Dobbert had hit her on her bottom with a belt, that she had the flu at the time she died, that she choked to death on some food, that she kept throwing up and the food got stuck in her throat, and that his father attempted to revive her by giving her mouth-to-mouth resuscitation. In response to questions from one of the investigating officers, John further responded that he was satisfied that Kelly had the flu and that she died from lack of medical care. Later, in a pre-trial deposition taken in Wisconsin, Dobbert's counsel referred John to his earlier sworn statement to police officers in Jacksonville.
In view of the fact that prior to and at the time of trial, Dobbert, through his counsel, was fully aware of John's different version of Kelly's death now offered as newly discovered evidence, we find that Dobbert has failed to demonstrate facts legally sufficient to warrant the granting of the requested relief.
Accordingly, Dobbert's request for permission to file a petition for writ of error coram nobis is denied.
It is so ordered.
SUNDBERG, C.J., and ADKINS and McDONALD, JJ., concur.
OVERTON, J., dissents.
BOYD, Judge, dissents:
"I dissent and would remand for an evidentiary hearing because the critical and principal state witness now says he committed perjury at the trial. One reason I dissented in the original opinion was because of deficiencies in the son's testimony and because his vision was 20/200."
NOTES
[1] Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).