416 So.2d 450 (1982)
William D. CHRISTOPHER, Defendant,
v.
STATE of Florida, Appellee.
No. 62183.
Supreme Court of Florida.
June 23, 1982.
*452 Michael R.N. McDonnell, Naples, for appellant.
Jim Smith, Atty. Gen. and William E. Taylor, Asst. Atty. Gen., Tampa, for appellee.
ADKINS, Justice.
We have for review an order denying a motion to vacate, set aside, or correct sentence. Defendant has also filed a motion for leave to amend pleadings and for remand, a petition for writ of error coram nobis and a motion for stay of execution. We have jurisdiction. Art. V., § 3(b)(1), Fla. Const. 1981.
Defendant, William D. Christopher, was convicted and sentenced to death for the murders of his daughter's adoptive mother and the mother's boyfriend. This Court affirmed both the conviction and the sentence. See Christopher v. State, 407 So.2d 198 (Fla. 1981), cert. denied, ___ U.S. ___, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982). Defendant then filed, pursuant to Rule 3.850, Florida Rules of Criminal Procedure, a motion to vacate, set aside or correct sentence. The motion, filed in the circuit court of Collier County, alleged eight grounds for relief. It was denied, and this appeal followed. We consider the issues in the order in which they are raised.
Defendant first claims that he was denied the opportunity to submit to psychological and psychiatric examinations which would have determined whether he was competent to stand trial and whether he was insane at the time of the offenses. In its order denying appellant's motion to vacate, set aside, or correct sentence, the trial court properly classified this as an issue which could have been, should have been, or was raised on direct appeal. It is not a matter which may be considered in a post-conviction relief proceeding. Goode v. State, 403 So.2d 931 (Fla. 1981.)
Before the first trial (which resulted in a mistrial) as well as before the second trial, defendant filed a motion requesting appointments of psychiatrists for the purpose of examining defendant and determining his mental competency. Appropriate orders were entered. On each occasion the defendant refused to see the psychiatrist appointed to examine him so no reports were issued. The question arises as to whether it was necessary for the trial judge to have a hearing to determine the competency of defendant to stand trial, i.e., (1) whether the defendant had a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and (2) whether he had a rational as well as a factual understanding of the proceedings against him. See Lane v. State, 388 So.2d 1022 (Fla. 1980). The trial court has the responsibility to conduct a hearing for competency to stand trial whenever it reasonably appears necessary, whether requested or not, to ensure that a defendant meets the standard of competency set forth in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In the case sub judice there is nothing in the record which makes it appear reasonably necessary to inquire into the competency of the defendant to stand trial. Therefore, *453 the trial court did not have any responsibility to conduct a hearing for this purpose. By refusing to be examined by the psychiatrist, defendant waived the defense of insanity. Parkin v. State, 238 So.2d 817, 821 (Fla. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971).
Defendant next contends that in light of the circumstances of this case and the sentences imposed in comparable situations, the sentence here ordered is disproportionate, excessive and unwarranted. Execution of the sentence, he argues, would violate the state and federal constitutions because it was "imposed pursuant to a pattern and practice of arbitrary and capricious capital sentencing." This issue, like the first, is one that could have been raised on appeal, and it may not be considered in a rule 3.850 proceeding.
The third claim made is that the sentence imposed is inappropriate, improper, illegal, cruel, and unusual because his polygraph examination "reveals strong doubt as to the guilt or extent of complicity" of appellant. Again, such an issue is one which should have been raised on direct appeal and we will not consider it in this proceeding.
Defendant next contends that this Court violated his due process rights by receiving and considering in his initial appeal psychological reports on him which were not a part of the record. In its order denying defendant's motion to vacate, set aside or correct sentence, the trial court correctly held that it has no jurisdiction to review the action of the Florida Supreme Court on a 3.850 motion. This is not a valid ground for relief. Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, ___ U.S. ___, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).
The fifth claim in defendant's motion is that his constitutional rights were violated by the trial court's refusal to permit the introduction into evidence of the results of his polygraph test. We addressed this issue on defendant's direct appeal and it may not be reviewed a second time in this proceeding.
Defendant's assertion that the death warrant signed by the Governor of Florida was not properly processed and thus is invalid is not an issue cognizable in a 3.850 proceeding. Motions for post-conviction relief are for the purpose of contesting the validity of a judgment or sentence, not the procedural aspects of a death warrant. However, we treat this claim as a petition for habeas corpus and find the death warrant to be legally sufficient.
The seventh claim in defendant's motion is that he was denied the right to a fair and impartial jury chosen from a cross section of the community. More specifically, he contends that the precepts of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), were violated by the excusal of certain persons from service on the jury at his trial. Like several of the preceding issues, this is a matter which should have been raised on direct appeal and we may not consider it now.
Finally, defendant argues that he was denied the effective assistance of counsel guaranteed by the constitutions of Florida and the United States. In his motion, defendant provides nine "facts" which he contends demonstrate that he was inadequately represented and that an evidentiary hearing is warranted. We disagree.
In Knight v. State, 394 So.2d 997 (Fla. 1981), we adopted the following standards for determining whether an attorney has provided reasonably effective assistance of counsel:
First, the specific omission or overt act upon which the claim of ineffective assistance of counsel is based must be detailed in the appropriate pleading.
Second, the defendant has the burden to show that this specific omission or overt act was a substantial and serious deficiency measurably below that of competent counsel. As was explained by Judge Leventhal in [United States v. DeCoster, D.C.App., 624 F.2d 196] DeCoster III: "To be `below average' is not enough, for that is self evidently the case *454 half the time. The standard of shortfall is necessarily subjective, but it cannot be established merely by showing that counsel's acts or omissions deviated from a checklist of standards." 624 F.2d at 215. We recognize that in applying this standard, death penalty cases are different, and consequently the performances of counsel must be judged in light of these circumstances.
Third, the defendant has the burden to show that this specific, serious deficiency, when considered under the circumstances of the individual case, was substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings. In the case of appellate counsel, this means the deficiency must concern an issue which is error affecting the outcome, not simply harmless error. This requirement that a defendant has the burden to show prejudice is the rule in the majority of other jurisdictions.
Fourth, in the event a defendant does show a substantial deficiency and presents a prima facie showing of prejudice, the state still has an opportunity to rebut these assertions by showing beyond a reasonable doubt that there was no prejudice in fact. This opportunity to rebut applies even if a constitutional violation has been established.
Id. at 1001 (note omitted). When the standards established in Knight are applied to defendant's allegations, it is clear that those allegations do not warrant an evidentiary hearing. We do not believe that the second or third requirements of Knight have been met.
We now consider defendant's motion for leave to amend pleadings and for remand, which alleges a violation of his due process rights as set forth in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant has submitted a sworn statement in which a Mr. Daniel R. Sizemore states that while cleaning up the scene of the murders, he found a tape recording on which defendant's daughter expressed extreme hatred for one of the victims. Mr. Sizemore further claims that he notified someone at the Collier County Sheriff's Department of the tape and then left it with his employer's secretary with directions to give it to whoever came from the sheriff's office to pick it up. Mr. Sizemore states that the tape was picked up, and that when there was never any mention of it in press reports of defendant's trial and appeal, he decided to contact defense counsel and give the statement.
Defendant claims that the tape in question would be material evidence with regard to his daughter's motive and state of mind, both of which he contends were issues in these proceedings. Because he requested all exculpatory evidence available to the prosecution and because the tape was "suppressed by the prosecution and never made available to the defense," defendant contends that his due process rights were violated. See Brady v. Maryland. We disagree.
Two factors convince us that there are not grounds sufficient to allege a Brady violation and that this cause need not be remanded on those grounds. First, there is absolutely no evidence or allegation that the prosecution ever received or was aware of the tape recording. Mr. Sizemore simply states that he left it with the secretary and that someone picked it up. His testimony can hardly be considered proof that the prosecutor had the information which was allegedly suppressed.
Also influencing our decision is the cumulative nature of the material which Mr. Sizemore claims was on the tape. There was testimony at trial which tended to show defendant's daughter's dislike of her adoptive mother's boyfriend. If the tape was found and a new trial was ordered so that it could be introduced, we doubt that it would add anything to what was considered at the first trial. It would simply be cumulative evidence. Because of the tape's cumulative nature and the lack of any evidence that the prosecution was ever even aware of its existence, we deny defendant's request that the cause be remanded *455 to the trial court for a hearing to determine whether there was a Brady violation.
Finally, we consider defendant's request for permission to apply to the trial court for writ of error coram nobis. Defendant bases his request upon a statement made by his mother, Mary Still, in which she claims that his daughter, Norma Sands, admitted committing the crimes of which defendant was convicted. According to Mrs. Still, Norma told her that she, Norma, shot both victims and that defendant only learned of the murders after they had been committed.
Defendant contends that the facts in Mrs. Still's statement were first disclosed in a letter written to the trial judge after defendant's trial was over, that Norma's confession is more consistent with the known facts than is the theory upon which defendant was convicted, and that Mrs. Still's statement, if proven true, would exonerate defendant. In light of the foregoing, argues defendant, this Court should grant him permission to apply for a writ of error coram nobis. We disagree.
In Dobbert v. State, 414 So.2d 518, Fla., 1982, we made the following observation regarding the requirements which must be met by a defendant who seeks coram nobis relief:
One important prerequisite which must be demonstrated before an appellate court will grant leave to proceed in the trial court is that the facts alleged must not have been known by the court, by the party, or by his counsel at the time of trial. It must also be made clear that defendant or his counsel could not have discovered them through the use of due diligence.
Id., at 520.
It appears that defendant and his counsel did know, at the time of trial, the gist of Mrs. Still's statement. In his main brief, defendant claimed that his daughter had admitted her guilt and had described her complicity in the crimes. He then states that "[t]his fact was known to trial counsel but he never attempted to bring forth such evidence either in the guilt phase or the sentencing phase of the trial." Even if we did not have that statement from the brief to demonstrate defendant's and his trial counsel's awareness of Mrs. Still's opinion, we would still refuse permission for the petition on the basis that the information could have been discovered by the exercise of due diligence. Mrs. Still testified at the first trial which resulted in a mistrial, and Norma testified at both trials. Each could have been questioned at that time regarding Norma's complicity.
Having reviewed each of the claims raised by defendant, the trial court's denial of his motion for post-conviction relief, is affirmed, defendant's motion for leave to amend pleadings and for remand is denied, and his request for permission to apply to the trial court for writ of error coram nobis is denied. The motion for stay of execution is denied. A petition for rehearing will not be considered.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.