**Ernest John DOBBERT, Jr.,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Corrections of the State of Florida, R.L. Dugger, Superintendent of Florida State Prisons, Respondents-Appellees.**

No. 84–3608.

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1984.

Patrick D. Doherty, Clearwater, Fla., Steven H. Malone, Rahdert, Malone & Richardson, St. Petersburg, Fla., for petitioner-appellant.

Carolyn M. Snurkowski, Asst. U.S. Atty., Miami, Fla., for respondents-appellees.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

The motion for further stay beyond 10:00 a.m. E.D.T. on Friday, September 7, 1984 is DENIED. The judgment of the district court, 593 F.Supp. 1418, is AFFIRMED on the basis of the district court's opinion of September 3, 1984.

AFFIRMED.

CLARK, Circuit Judge, dissenting:

I would grant a stay of execution to permit a panel to review fully the substantial constitutional questions raised in the appeal. It has been consistently recognized by the Justices of the Supreme Court, as well as the judges of this Circuit, that death is a punishment different in kind from any other. The "qualitative difference of death from all other punishments," therefore, "requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *Ramos v. California*, 463 U.S. 992, 103 S.Ct. 3446, 3451, 77 L.Ed.2d 1171 (1983). The district court entered its order denying the writ near midnight on Monday, Sept. 3, 1984. Our court started receiving parts of the file on Tuesday morning and had the entire file by that evening. The panel has had less than 48 hours to review a lengthy record and to grapple with some difficult issues.

The district court entered a certificate of probable cause. *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), requires that "[w]hen a certificate of probable cause is issued by the district court, as it was in this case, ... petitioner must then be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal." 103 S.Ct. at 3394. Additionally, the Court stated that a petitioner is entitled to a stay to permit due consideration of the merits if the court of appeals is unable to resolve the merits of an appeal before the scheduled date of execution. *Id.* at 3393.

We have heard oral argument at 1:00 p.m. today, Sept. 6, 1984, after advising counsel to argue the case on the merits. Despite the efforts of all, there has not been enough time in which justiciably to decide this case.

Dobbert was convicted of first degree murder pursuant to instructions that defined premeditation and felony murder. In its felony murder instruction, the trial court charged that premeditation was unnecessary for a first degree murder conviction if the killing was committed during the course of "arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping." The underlined language was repeated six times in the instructions according to petitioner. The evidence disclosed no arson, rape, robbery, burglary, or kidnapping, but did reveal a pattern of extreme child abuse. The language included in the felony murder jury instruction was declared unconstitutional by the Florida Supreme Court in *Franklin v. State*, 257 So.2d 21, 23 (1971), on the grounds that it was void for vagueness.[1] That decision was entered prior to trial of this case and thus was known to trial counsel and the state judge. There was no objection to the instruction at trial or on appeal. In petitioner's first petition of a writ in the state court and our court, this issue was not presented. It has been presented in the second petition to both courts under the claims of plain error, ineffective assistance of trial counsel and of appellate counsel.

The district court has held that it could not consider petitioner's claim because of abuse of the writ and procedural default. The principles of abuse of the writ are being considered by our court sitting en banc next week in the case of *Moore v. Zant*, 734 F.2d 585 (11th Cir.1984), rehearing en banc granted. The district court

denied the claims of ineffective trial and appellate counsel.

I would stay the execution to give a panel of this court an opportunity to study thoroughly the constitutionality of the jury instruction and the abuse of the writ issues. In *Stromberg v. U.S.*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the Supreme Court held that where a jury finds a defendant guilty under a general verdict and the instructions contain an unconstitutional ground for finding defendant guilty, the conviction must be vacated.[2] *See also, Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983).

With respect to abuse of the writ, I do not find anything in the record to convince me that counsel for the defendant intentionally or inequitably attempted to abuse the habeas corpus remedy. He volunteered *pro bono* to represent Dobbert after Dobbert's first execution was set. He filed a petition with 13 grounds for relief within several days of undertaking the representation due to the fact that petitioner's execution was imminent. Additionally, I do not feel that the panel has had adequate time to consider whether this claim was subject to procedural default.

An entirely different constitutional issue is raised by petitioner's claim that the verdict of the jury (if it convicted Dobbert of first degree murder on the premeditation theory rather than the felony murder issue) was influenced by tainted or unreliable testimony. "Because of the qualitative difference [of the death penalty], there is a corresponding difference in the need for reliability in the determination that death is the

---

1. The Florida Supreme Court held that F.S.A. § 800.01 made it a felony to commit an "abominable and detestable crime against nature." It was this felony that the trial judge made reference to in his jury instruction.

2. In *Stromberg*, the Court said "A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment. The first clause of the statute being invalid upon its face, the conviction of the appellant, which so far as the record discloses may have rested upon that clause exclusively,

must be set aside." 283 U.S. at 369–370, 51 S.Ct. at 535–536. That is exactly the situation present in this case. In *Christian v. State*, 272 So.2d 852 (Fla.App.1973), the Florida Court of Appeals, Fourth District, faced with the same erroneous instruction as in this case and a first degree murder conviction possibly based upon that language concluded that because the underlying statute was unconstitutional, "[t]he act of instructing the jury that it could find the defendant guilty of a non-existent crime pursuant to an unconstitutional statute is fundamental error of the worst sort." 272 So.2d at 856–857.

appropriate punishment in a specific case." *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).[3]

The critical testimony that may have allowed the jury to find petitioner guilty of first degree murder under the premeditation theory urged by the state for Kelly's killing was the testimony of petitioner's then 13-year old son, Ernest John Dobbert, III. ("John"). John testified that on the night Kelly died, his father had been choking her and that she stopped breathing while the petitioner was choking her. Petitioner claimed that Kelly had become ill and had choked on her own vomit and that he was attempting to save her life by giving her mouth-to-mouth resuscitation when she died. His version of the facts corresponds with John's initial statement made to the police in 1972, very soon after the death of his brother and sister and some two years before trial.[4] However, in 1982, John recanted the testimony that he gave at trial. In the affidavit, he said that in reality what happened was "The night she died, she was sitting in bed eating some soup. She started vomiting, and then choking on her own vomit and food. My father tried to give her mouth-to-mouth resuscitation, but it didn't work. Kelly was not killed by my father; she died accidently, choking on food or vomit." In the affidavit he maintained that he did not tell the truth at trial because he was afraid of his father. He wanted to be sure his father would be in prison in order to assure his own safety. He also maintains that he was undergoing extensive psychiatric therapy, involving both hypnosis and medication, during this time frame. Additionally, he maintains, "Although no one ever said it directly, I knew that my social worker, Mrs. Lenz, and other people on the staff at the children's home [where he had been placed subsequent to his being found by the authorities in Jacksonville] wanted me to testify that my father killed my sister. I looked up to these people and wanted desperately to please them—they were good to me and concerned about me in a way I hadn't known for years."

The trial judge in petitioner's state collateral proceedings found in essence that John's trial testimony was more credible than the 1982 evidence. This issue involves more than a mere recantation and cannot be dismissed as not of constitutional dimension because it is only newly-discussed evidence. *See Drake v. Francis,* 727 F.2d 990, 993 (11th Cir.1984) (vacated for en banc consideration on other issues). Time has not permitted an accurate appraisal of whether John Dobbert's 1974 trial testimony was unduly influenced by the psychiatric treatment and medication administered between 1972 and 1974. My uncertainty is compounded by Justice Boyd's comment in his dissent to the 1982 opinion of the Florida Supreme Court, *Dobbert v. State,* 414 So.2d 518, 520: "One reason I dissented in the original opinion was because of the deficiencies in the son's testimony and *because his vision was 20/200.*" (emphasis added).

Since the jury recommended a life sentence (10–2) and its finding of first degree murder could have been based on a possibly unconstitutional felony murder instruction or unreliable testimony of Dobbert's son John, I would stay the execution and permit a panel of this court to consider these issues after having time to study the record and the applicable case law.

---

3. The Supreme Court reiterated this concern just two months ago in the case of *Spaziano v. Florida,* —— U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). "We *reaffirm* our commitment to the demands of reliability in decisions involving death...." at ——, 104 S.Ct. at 3160, 82 L.Ed.2d at 349.

4. This statement refers to a 1972 statement given to the police by John a week after he was found by the police wandering the streets of Jacksonville. Subsequently, and before trial, he gave a 1974 deposition which was similar to the testimony he gave at trial, also in 1974. Additionally, in a 1977 suit on his behalf against the City of Jacksonville for money damages, he reaffirmed that what he said at trial was true.