William D. CHRISTOPHER, Petitioner,

v.

STATE OF FLORIDA, Respondent.

No. 82–1293–Civ–JLK.

United States District Court, S.D. Florida.

March 13, 1984.

Joseph Daye, Fort Lauderdale, Fla., for petitioner.

William E. Taylor, Asst. Atty. Gen., Tampa, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

JAMES LAWRENCE KING, District Judge.

On June 15, 1982, a death warrant was signed by the Governor of the State of Florida for the execution of William D. Christopher. Mr. Christopher then filed this Petition for Writ of Habeas Corpus seeking a stay of execution. The stay was granted on June 23, 1982, to permit this court to review the federal constitutional claims of petitioner. 541 F.Supp. 734.

In June of 1982, the United States Court of Appeals had under consideration a case challenging the alleged consideration of *ex parte* information by Justices of the Florida Supreme Court. The Petitioner Christopher raised this identical issue in his petition and asked for a stay until the appellate process was completed. The Eleventh Circuit Court of Appeals, in *Ford v. Strickland*, 676 F.2d 434, *cert. den.* —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983) rejected the contention that the Florida Supreme Court had unconstitutionally considered such information in these cases. This court then proceeded to hold several hearings on all of the issues raised in Mr. Christopher's petition for Habeas Corpus.

### FACTUAL BACKGROUND

The tragic events of this case commenced in 1962, with the birth of Norma Sands in Memphis, Tennessee, as the daughter of William D. Christopher and Patricia Sands. Christopher, the petitioner herein, was not married to his daughter's mother and was in prison at the time she was born. Patricia Sands, unable to pro-

vide for the baby under these circumstances gave the child to her close friend, Bertha Skillin, to raise. Eventually, Bertha left Memphis and moved to Florida with Norma, all the while maintaining a good relationship with the natural mother, Patricia Sands. Norma met her father, William Christopher, for the first time in the summer of 1977, when she returned to Memphis for a vacation visit with her natural mother. She was thirteen years old at this point in her life.

Norma's next encounter with her father was in 1977, when the petitioner showed up in Naples, Florida, where she was living with her adoptive mother, Bertha Skillin and Bertha's companion, George Ahern. George and Bertha, feeling sorry for the petitioner, invited Christopher to move in with them temporarily until he could find a place to stay.

Within a short period of time Christopher and Norma developed an incestuous relationship, and decided to leave Naples and return to Memphis. Realizing that Bertha would never approve of her teenage adoptive daughter leaving Florida with Christopher, they devised a plan to leave secretly. On the morning of August 21, 1977, Christopher planned to drive Norma to school, returning to the house to pick up their personal belongings while George and Bertha were out and leaving for Memphis after school let out.

Unfortunately for Bertha, she discovered Christopher's plan, confronted him and attempted to call the police. Christopher killed her with a gun shot to the head, and dragged her bleeding body from the kitchen, down the hall, where he concealed it in the bathroom.

Later in the morning, an unsuspecting George Ahern returned from an early morning fishing trip. Without telling Ahern that he had just murdered Bertha and hidden her body in the back bathroom, Christopher asked Ahern for a loan. Ahern agreed and Christopher accompanied him to the Naples Bank where $300.00 was withdrawn from George and Bertha's account and given to the petitioner. After returning to the apartment Christopher and Ahern engaged in an argument resulting in Ahern being knocked to the floor. Ahern ran from Christopher, down the hall and into the bedroom, slamming the door shut. Christopher pushed open the door and shot Ahern twice, once in the arm and once in the head, killing him.

Leaving the two murder victims in the apartment, Christopher then picked Norma up from school and fled to Tennessee where he was apprehended on September 22, 1977. Shortly thereafter, he gave a statement to Memphis police confessing to both murders.

## PROCEDURAL BACKGROUND

A. The State of Florida tried petitioner twice for the murders of Bertha Skillin and George Ahern. The first trial, in May 1978 resulted in a hung jury and mistrial. At the second trial, Christopher was convicted by a jury of two counts of first degree murder and on August 18, 1978, he was sentenced to death, as recommended by the jury. The conviction and sentence were affirmed on appeal by the Supreme Court of Florida. 407 So.2d 198 (Fla.1981), *cert. den.* 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982). The Florida Supreme Court reviewed the case a second time in June 1982, on an appeal from an order denying a motion to vacate, set aside, or correct sentence and on a petition for writ of error *coram nobis.* The Florida Supreme Court again upheld the conviction and sentence. 416 So.2d 450 (Fla.1982).

B. In the course of the two appeals, the Florida Supreme Court reviewed thirteen issues:

1. denial of psychological and psychiatric examinations

2. proportionality of sentence

3. admissibility of the polygraph examination

4. consideration of ex parte information by the Florida Supreme Court

5. improper processing of the death warrant

6. selective exclusion of jurors

7. effective assistance of counsel

8. the existence of evidence showing a motive for Norma Sands to have committed the murders

9. the existence of new evidence showing that Norma Sands committed the murders

10. admissibility of the defendant's confession

11. admissibility of evidence of the defendant's sexual relationship with his daughter

12. propriety of the trial court's refusal to order a sodium pentothal examination

13. consideration of aggravating and mitigating factors.

The petitioner Christopher now seeks federal habeas corpus relief asserting eleven constitutional errors. Bearing in mind the words of Justice White,

> Under 28 U.S.C. § 2241, a writ of habeas corpus disturbing a state-court judgment may issue only if it is found that a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (1976). A federal court may not issue the writ on the basis of a perceived error of state law. *Pulley v. Harris*, ___ U.S. ___, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

We turn to a consideration of petitioner's contentions.

## I. AGGRAVATING AND MITIGATING CIRCUMSTANCES

The Florida death penalty statute was described in *Barclay v. Florida*, ___ U.S. ___, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983)

> Florida has adopted a "trifurcated" procedure for identifying the persons convicted of a capital felony who shall be sentenced to death. See *Tedder v. State*, 322 So.2d 908, 910 (Fla.1975). Procedurally it consists of a determination of guilt or innocence by the jury, an advisory sentence by the jury, and an actual sentence imposed by the trial judge.

This sentencing procedure was upheld in *Proffitt v. Florida*, 428 U.S. 242, 248, 96 S.Ct. 2960, 2965, 49 L.Ed.2d 913 (1976) holding:

> [I]f a defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the trial judge and jury to determine his sentence. Evidence may be presented on any matter the judge deems relevant to sentencing and must include matters relating to certain legislatively specified aggravating and mitigating circumstances. Both the prosecution and the defense may present argument. .... At the conclusion of the hearing the jury is directed to consider [w]hether sufficient mitigating circumstances exist ... which outweigh the aggravating circumstances found to exist; and ... [b]ased on these considerations, whether the defendant should be sentenced to life [imprisonment] or death. §§ 921.141(2)(b) and (c) (Supp. 1976–1977).[1]

> The jury's verdict is determined by majority vote. It is only advisory; the actual sentence is determined by the trial judge ...

The trial judge is also directed to weigh the statutory aggravating and mitigating circumstances when he determines the sentence to be imposed on a defendant. The statute requires that if the trial court imposes a sentence of death, "it shall set forth in writing its findings upon which the sentence of death is based as to the facts: (a) [t]hat sufficient [statutory] aggravating circumstances exist ... and (b) [t]hat there are insuffi-

---

**1.** The language of the statute sets out the trifurcated procedure. Advisory sentence by the jury. —After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:

(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);

(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and

(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment of death. § 921.141(2).

cient [statutory][2] mitigating circumstances ... to outweigh the aggravating circumstances. §§ 921.141(3) (Supp. 1976–1977)[3]

The Florida Supreme Court has stated that:

"... [T]he procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life impris-

onment in light of the totality of the circumstances present." ... *Elledge v. State*, 346 So.2d 998, 1003 (Fla.1977), quoting *State v. Dixon*, 283 So.2d 1, 10 (Fla.1973). *See Barclay v. Florida supra* 103 S.Ct. at 3431.

"This determination requires the trial judge to focus on the circumstances of the crime and the character of the individual defendant." *Proffitt v. Florida, supra* 428 U.S. at 251, 96 S.Ct. at 2966.

If a defendant is sentenced to die, the Florida Supreme Court can review that

2. **Findings in support of sentence of death.**—Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts. § 921.141(3)

(a) That sufficient exhausting circumstances exist as enumerated in subsection (5); and

(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances .... § 921.141(3)

. . . . . .

Aggravating circumstances.—Aggravating circumstances shall be limited to the following:

(a) The capital felony was committed by a person under sentence of imprisonment.

(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.

(c) The defendant knowingly created a great risk of death to many persons.

(d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb.

(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

(f) The capital felony was committed for pecuniary gain.

(g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.

(h) The capital felony was especially heinous, atrocious, or cruel.

(i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5).

. . . . . .

Mitigating circumstances.—Mitigating circumstances shall be the following:

(a) The defendant has no significant history of prior criminal activity.

(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(c) The victim was a participant in the defendant's conduct or consented to the act.

(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.

(e) The defendant acted under extreme duress or under the substantial domination of another person.

(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

(g) The age of the defendant at the time of the crime. § 921.141(6)

3. The statutory procedure that existed at the time of petitioner's trial provided that only statutory mitigating circumstances could be considered. Subsequently, the statute was amended in 1979 to prescribe a determination whether the statutory aggravating circumstance are outweighed by *any* mitigating circumstance, statutory or nonstatutory. § 921.141(3)(a) and (b) 1979 Fla.Law, c. 79–353. (The U.S. Supreme Court had earlier ruled that evidence at sentencing phase cannot be limited to statutory mitigating circumstances.) *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

However, as *Barclay* noted, even before the amendment, the Florida Supreme Court had construed this statute to permit consideration of *any* mitigating circumstances. 103 S.Ct. 3418, n. 11.

In fact, the record of the evidentiary hearing held before Christopher's trial judge and jury before jury sentencing shows that defense counsel was permitted to present evidence of nonstatutory mitigating circumstances to the jury for its consideration in sentencing. (R. 969–974).

case in light of other decisions and determine if the death penalty is too great. *State v. Dixon, supra* at 10.[4]

Petitioner asserts that the Florida courts have not properly construed the law pertaining to aggravating and mitigating circumstances in this case.

### A. INSUFFICIENCY OF FINDING OF AGGRAVATION THAT CHRISTOPHER HAD PRIOR CONVICTIONS FOR ATTEMPTED RAPE AND ASSAULT TO COMMIT MURDER.

█ Petitioner contends that the evidence was insufficient to identify him as the same William Christopher who plead guilty and was sentenced for assault to commit murder and attempted rape, as established by the prior records introduced by the state into evidence. (R. 1089–1091). Petitioner has not denied that he is the same William Christopher that committed the prior felonies; he merely challenges the process by which he was identified. Petitioner has previously raised this issue in his direct appeal to the Florida Supreme Court. That Court resolved the issue unfavorably to the petitioner and affirmed the judgment of the trial court. *Christopher v. State,* 407 So.2d 198, 202 (Fla.1981).

The standard by which this habeas court will evaluate the state trial judge's resolution of factual issues was recently stated by the U.S. Supreme Court in *Wainwright v. Goode,* — U.S. —, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). The *Goode* Court held that:

> [u]nder 28 U.S.C. § 2254(d)(8), a federal court, in ruling on a petition for a writ of habeas corpus is not to overturn a factual conclusion of a state court unless the conclusion is not "fairly supported by the record." That rule applies equally to findings of trial courts and appellate courts. *Sumner v. Mata,* 449 U.S. 539,

545–547 [101 S.Ct. 764, 768–769, 66 L.Ed.2d 722] (1981).

Implicit in the trial judge's finding on the aggravating circumstances that the defendant had a prior violent felony conviction was the finding that there was sufficient evidence adduced at trial for the trial judge to determine that the petitioner was the man referred to in the documents introduced at trial.

The Court, after carefully reviewing the entire record finds that the conclusions of the trial judge were amply supported by the record. In addition to the evidence noted by the Florida Supreme Court, *Christopher v. State, supra,* this court finds that

1) petitioner. did not object to the introduction of the documents reflecting the convictions (R. 1091);

2) petitioner specifically waived any objection to the certification of these documents (R. 1091, 1092);

3) petitioner's trial counsel argued to the jury that "there's only really one aggravating circumstance here ... that the Defendant was previously convicted of another capital felony, or a felony involving the use of threat or violence to a person." (R. 1106).

4) the presentence investigation report set forth Christopher's prior convictions. The defendant had opportunity to comment but declined to do so. His trial counsel made the following statement:

> "Mr. Hines: Your Honor, I spoke to the defendant last week about this matter, and I explained to him that he had an opportunity and a right to present witnesses at this time with regard to the factual matters contained in the presentence investigation. (R 1328).

---

**4.** The U.S. Supreme Court has held that comparative proportionality review is *not* required in death cases. *Pulley v. Harris,* — U.S. —, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). The Florida death penalty statute does not require comparative proportionality review; however, the Florida Supreme Court has stated that: "[since] the

inception of the "new" death penalty statute in 1972, the court has engaged in a proportionality review of death cases to ensure rationality and consistency in the imposition of the death penalty." *Sullivan v. State,* 441 So.2d 609, 613 (Fla. 1983) citing *State v. Dixon, supra* ). *See Pulley v. Harris, supra* n. 2.

Petitioner's challenge to the sentence on this ground is without merit and does not reach constitutional dimensions.

## B. SUFFICIENCY OF FINDING OF AGGRAVATION THAT THE TWO MURDERS WERE HEINOUS, ATROCIOUS OR CRUEL.

■ Again, this issue was raised on direct appeal to the Florida Supreme Court which approved the findings of the trial judge under Florida law, holding that the facts supported the presence of this second statutory circumstance. *Christopher v. State, supra* at 202, 203.

Under *Goode, supra* this court's review of findings of fact is limited to whether the findings are fairly supported by the record. Upon careful review of the entire record, this Court concludes that the facts fairly support the finding that the murders were heinous, atrocious and cruel.

The double murders of the people who had befriended Christopher, reared his daughter, and gave him a place to live, coupled with the circumstance wherein the murderer chased his fleeing, terrified victim from the living room through a hall into a bedroom where he killed him in cold blood, meet the legal standard of heinous, atrocious and cruel. The imposition of the penalty of death for these brutal murders does not so shock the conscience of the court so as to invalidate the petitioner's death sentence. *Moore v. Balkcom,* 716 F.2d 1511 (11th Cir.1983); *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978), *cert. den.* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), *Tucker v. Zant,* 724 F.2d 882 (11th Cir.1984).

Further, this Court finds that it was not arbitrary or irrational for the trial judge to apply the statutory aggravating circumstances to the facts of this case. *See Barclay v. Florida,* — U.S. —, 103 S.Ct. 3418, 3423, 77 L.Ed.2d 1134 (1983). The conclusions of the trial judge were consistent with Florida law and the principals of fundamental fairness in the Federal Constitution.

## C. SUFFICIENCY OF FINDING THAT THE AGGRAVATING CIRCUMSTANCES OUTWEIGHED THE MITIGATING CIRCUMSTANCES

The Court notes that many of the arguments urged under this ground of the writ are reiterated under other grounds. The court defers its full discussion of the issue of admissibility of the polygraph test for its consideration of the fifth issue raised by petitioner. For now, the Court states only that this ground of the petition is without merit as it applies to the improper restriction of a mitigating factor.

Petitioner alleges that he was under great emotional strain over the alleged fondling of petitioner's daughter, Norma Sands, by George Ahern and that, therefore, the statutory mitigating factor that "[t]he capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance," § 921.121(6)(b) was present and should have been considered in sentencing.

Further, petitioner contends that his family history of a broken home, his background of getting into trouble, and his history of insecurity as shown in his presentence investigation report (SR. 9) were sufficient evidence for the trial judge to find that the mitigating factors "clearly" outweigh the aggravating factors.

These grounds were considered by the Florida Supreme Court on direct appeal. *Christopher v. State, supra,* citing *State v. Dixon,* 283 So.2d 1, 6 (Fla.1973), *cert. den.,* 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), the Supreme Court stated:

We also held in *Dixon* that when one or more aggravating circumstances are found, the death penalty is presumed proper unless the aggravating circumstance or circumstances are overridden by one or more of the mitigating circumstances. 283 So.2d at 9. In the instant case it does not expressly appear from the specific findings of fact that the trial judge found the existence of any mitigating circumstances. Indeed, his written

findings expressly negate the existence of any mitigating circumstances.

The findings of the trial court are supported by the facts and testimony in the record. No reversible error has been demonstrated. We therefore hold that the judgment and sentence of death upon the appellant, William D. Christopher, are affirmed.

■ Examination of the record reveals that the trial judge fully considered the evidence before him and did not limit his consideration of mitigating factors to those specifically enumerated in Fla.Stat. § 921.-141. *See* n. 2. At the sentencing hearing, the trial judge stated that he had read the presentence investigation report which "contain[ed] very valuable information about the life that you led in the past." (R. 1233). Further, the record is clear that the trial judge considered Florida's sentencing statute, § 921.141 and the guidelines ("I'm talking about the aggravating circumstances and the mitigating circumstances in your case.") (R. 12331). The fact that the trial judge found that the petitioner's past troubled life did not outweigh the aggravating factors before him does not support the conclusion that the trial judge failed to consider petitioner's background. Similarly, the fact that the trial judge did not rule with petitioner on his argument for mitigation due to mental or emotional disturbance does not establish that the petitioner's state of mind was ignored.

■ The jury recommended the death penalty in this case. The record establishes that the trial judge properly considered all aggravating and mitigating factors and properly applied the law. When one or more aggravating factors are properly found, death is presumed to be the proper sentence unless it or they are overridden by one or more mitigating circumstances. *State v. Dixon, supra* at 9 (Fla.1973).

■ The Florida Supreme Court concluded that the death sentence was consistent with state law. *Christopher v. State, supra* at 203. The conclusion of the Florida Supreme Court is binding, absent a showing of constitutional deprivation. *Tucker v. Zant, supra; Wainwright v. Goode, supra.* This Court finds that the findings of the state trial judge are fully supported by the record and that the petitioner has not suffered any constitutional deprivation. Therefore, petitioner's claim for relief based on the sentencing procedures must be denied.

## II. SYSTEMATIC EXCLUSION FOR CAUSE

■ The second issue raised by petitioner is that he was denied his right to a jury composed of a representative cross-section of the community because of the systematic exclusion for cause of prospective jurors who did not state they were irrevocably committed to the death penalty, in violation of the requirements of the Sixth and Fourteenth Amendment set forth in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This claim was decided unfavorably to the petitioner by the Supreme Court of Florida in *Christopher v. State, supra* at 200. As stated before, the review by this court is limited to whether this claim reaches constitutional dimensions. For reasons discussed below, we find this claim for relief must be denied.

In *Witherspoon v. Illinois, supra,* the U.S. Supreme Court held that the jury impartiality to which a criminal defendant is entitled under the Sixth and Fourteenth Amendment precludes a state from executing a person if the jury that recommended the death penalty "was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious religious scruples against its inflictions." 391 U.S. at 522, 88 S.Ct. at 1777; *See Spinkellink v. Wainwright, supra.* Petitioner contends that in the exclusion of veniremen Huff and Matison, this is precisely what occurred.

Footnote 21 in *Witherspoon* clarified the Supreme Court's rationale:

We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death

by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.* Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction*, as opposed to the *sentence*, in this or any other case.

*Id.* [emphasis in original]

With these standards in mind, the Court has carefully reviewed the transcript of the voir dire examination of the two excluded veniremen. A reading of the transcript of the examination of Huff during voir dire shows that Mr. Huff stated unambiguously that he would be unable to return a verdict of guilty because of his opposition to capital punishment. In response to the question, "Even though if the evidence was there and you were convinced that the person was guilty, you're saying because of your belief you would not return a verdict of guilty?", venireman Huff replied, "Yes, Sir." (R. 269). Following this response, venireman Huff was excused for cause *without objection.* (R. 269).

A transcript of venireman Matison's voir dire reveals that he could have been excused, not under *Witherspoon,* but because his religious teachings would have prevented him from sitting in judgment in *any* criminal proceeding.

"Mr. Pellecchia: Mr. Matison, do you know of any reason why you could not render a fair and impartial verdict in this case?

Mr. Matison: No, I just wouldn't want to be the one that handed down the verdict. I don't think that I'm capable of judging a man." (R.–249).

After questioning other veniremen, the State returned to venireman Matison:

"Mr. Pellecchia: Mr. Matison, let me go back to what we were talking about previously. I may have misunderstood you. Did you say you didn't think you could sit in judgment on your fellow man?

Mr. Matison: No, I don't think I can.

Mr. Pellecchia: You don't think you can?

Mr. Matison: No.

Mr. Pellecchia: Therefore you wouldn't be able to fairly and impartially render a verdict?

Mr. Matison: I just don't think it's up to me to judge a man. I arrived at this on my biblical beliefs.

Mr. Pellecchia: On your biblical beliefs?

Mr. Matison: Yeah.

Mr. Pellecchia: Your Honor, may we approach the bench?

(Thereupon counsel had a discussion at the bench)." (R–252).

Following this side bench conference, Mr. Matison was excused without objection.

As the Florida Supreme Court stated in its appellate decision on this claim, at 200,

. . . The law is settled that the competency of a challenged juror is a mixed question of law and fact and is to be determined by the trial judge in his discretion. Manifest error must be demonstrated before the judge's decision will be disturbed. *Singer v. State,* 109 So.2d 7, 22 (Fla.1959); *Ashley v. State,* 370 So.2d 1191, 1194 (Fla. 3d DCA 1979). No such error has been demonstrated in the case *sub judice.*

This Court finds that the actions of the trial judge in dismissing veniremen Huff and Matison were proper and did not constitute abuse or manifest error. Petitioner's claim of *Witherspoon* violations are not substantiated by the record. Therefore, this claim for relief must be denied.

## III. VOLUNTARINESS OF CONFESSION

The third issue raised by petitioner is that (1) his confession was not freely and

voluntarily given; and (2) the police failed to honor his requests to cut off questions, in violation of the Fifth, Sixth and Fourteenth Amendment. Specifically, petitioner contends in his writ that Officers Mills and Young "who obtained the confession of the Petitioner, unfairly exploited Petitioner's weakness for his family and protecting them by implying that his confession would preclude their involvement." As to the second ground, petitioner contends that the record is clear that he wanted to cut off interrogation and that the police officers continued, in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Again, this issue was fully considered on appeal to the Florida Supreme Court which affirmed the trial court's finding of fact that petitioner's confession was voluntary and not coerced. *Citing Howell v. State*, 66 Fla. 210, 63 So. 421 (1913); *Jarriel v. State*, 317 So.2d 141 (Fla. 4th DCA 1975) *cert. den.* 328 So.2d 845 (Fla.1976). Petitioner does not challenge that his confession was made knowingly and intelligently.

■ This Court will not disturb a trial judge's finding of fact unless it reaches constitutional dimensions. *Wainwright v. Goode, supra.*

■ Under federal law, the test for voluntariness is whether the confession was "extracted by any sort of threat or violence, (or) obtained by any direct or implied promises, however slight (or) by the exertion of improper influence." *See Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970); *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976).

■ This Court has carefully reviewed the transcript of the petitioner's taped confession, the suppression hearing, and the testimony of the officers involved in obtaining the confession. The Court concludes that the finding of the trial judge that the confession was freely and voluntarily given is fully supported by the record and that petitioner has not suffered a constitutional

deprivation. This ground of petitioner's claim is clearly without merit.

The Court also finds, as did the Florida Supreme Court, that the second prong of petitioner's claim, that Officers Mills and Young failed to scrupulously honor petitioner's right to cut off interrogation is simply unsubstantiated by the record. The transcript of the confession shows that although petitioner indicated he would not continue, he in fact did continue to talk. (R. 1177, 1260). The transcript shows that at one point petitioner indicated he wished to stop and the police officers honored his request:

"Christopher: Well, Look, I'm just constantly telling lies, look I ain't got nothing to say at all, Pete, why I have, you know, and that's it. I ain't saying nothing else.

Mills: Okay.

Christopher: That I'm charged with two murders, _____, is all I can say.

Mills: Okay, This brings us up to another point, which has nothing to do with what we're talking about. Ah, we're here from Florida and these warrants, these warrants are from Florida. Which you know you have to be extradited down there. That can come about several different ways, you can sign on whether you want _____ here. Ah, would you sign a waiver and go back?" (T–68, 69)

Later, the transcript of the Motion to Suppress hearing reveals that petitioner began asking questions (R. 1177, 1260) and continued to speak, voluntarily, confessing to the murders. (R. 1262).

In *Edwards v. Arizona*, 451 U.S. 477, 486, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), the United States Supreme Court considered the question whether, after a suspect had invoked his right to counsel by cutting off questioning until counsel was provided, that the suspect could subsequently be interrogated without the presence of counsel. The Court held that once the suspect has clearly asserted his right to counsel, all custodial interrogation must cease and may not be resumed until either counsel is provided and present or until the

suspect voluntarily initiates further discussion. *Edwards,* supra, at 488, 101 S.Ct. at 1886. In *Solem v. Stumes,* —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), however, the Court found that the effect of further interrogation by the police after a request for counsel was not such as to taint the truth worthiness of the subsequent confession and, therefore, *Edwards* was not to be retroactively applied in collateral review of final conviction.

Applying those standards to the case now before the bar, the court finds a lesser standard should be applied where, as here, the suspect only indicates an intention to invoke this fifth amendment right to remain silent and does not clearly invoke his right to counsel. *Michigan v. Mosley,* 423 U.S. 96, 104, n. 10, 96 S.Ct. 321, 326, n. 10, 46 L.Ed.2d 313 (1975). But even the higher standard of the right to counsel would not cause a difference in this case because the suspect did not clearly ask for the assistance of counsel nor did he clearly discontinue the interrogation. In fact, the suspect not only voluntarily continued the interrogation he did so without interruption. This is in stark distinction from *Edwards* where the police had discontinued the interrogation because of the suspect's clear request for counsel and where the interrogation was re-initiated by the police the following day by telling the suspect that he "had to" talk to them. Further, even if *Edwards* were otherwise controlling in the case at bar it would not apply because *Solem* held that *Edwards* did not apply retroactively.

This Court finds that petitioner's confession was freely and voluntarily given and that the trial judge's actions in admitting the taped confession into evidence was proper. Therefore, this claim for relief must be denied as not reaching constitutional proportions.

## IV. IMPROPER ADMISSION OF PREJUDICIAL EVIDENCE

■ The next issue raised by petitioner is that the trial court's admission of petitioner's sexual activities with his daughter was irrelevant and highly prejudicial, outweighing any probative value. Petitioner contends he was therefore denied a fair trial, in violation of the Sixth, Eighth and Fourteenth Amendments.

The Florida Supreme Court, in finding this issue without merit, fully considered petitioner's claims and the trial judge's positions as shown in the transcript of the motion in limine. The State Court found that under Florida law evidence of the petitioner's incestuous relationship with his daughter was relevant and proper as showing motive. *Christopher v. State, supra* at 201, *citing Smithie v. State,* 88 Fla. 70, 101 So. 276 (1924); *Beard v. State,* 131 Fla. 512, 180 So. 1, 2 (1938); *McVeigh v. State,* 73 So.2d 694, 696 (Fla.), *appeal dismissed,* 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696 (1954); *Dodson v. State,* 334 So.2d 305 (Fla. 1st DCA 1976), *cert. den.,* 341 So.2d 1081 (Fla.1977).

The most complete discussion of the Eleventh Circuit's approach to challenges of evidentiary matters is found in *Nettles v. Wainwright,* 677 F.2d 410, 414–15 (5th Cir. Unit B 1982), cited in *Osborne v. Wainwright,* 720 F.2d 1237 (11th Cir.1983):

As a general rule, a federal court in a habeas corpus case will not review the trial court's actions in the admission of evidence. *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941); [other citation omitted]. While it is true that an evidentiary ruling which deprives a state court defendant of fundamental fairness is cognizable on habeas corpus, see *Barnard v. Henderson,* 514 F.2d 744 (5th Cir.1975) the federal court will make inquiry "only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial...." *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.1976). The admission of prejudicial evidence justifies habeas corpus relief only if the evidence "is material in the sense of a crucial, critical, highly significant factor." [citations omitted] (R. 1159, 1160).

We next consider whether the admission of evidence concerning petitioner's sexual ac-

tivities constituted a denial of "fundamental fairness." This Court finds it does not.

Petitioner contends that the evidence was introduced to merely show his bad character. It is, however, clear from the record, that the evidence was introduced to show motive and premeditation and that in admitting the evidence the trial judge acted properly.

The State contended that the motive for the murders was Christopher's jealousy and anger over the sexual advances allegedly made by George Ahern to Norma Sands. (R. 8). The record reflects that Christopher was involved incestually with Norma and that he planned to leave Naples and take her with him. (R. 695). In attempting to prevent this, when Bertha Skillin learned of the plan, she tried to call the police to prevent Norma from leaving and was killed. Later, after George Ahern returned home, Christopher shot and killed him after an argument and fight over George's advances to Norma. (R. 6).

The evidence of incest as showing motive was relevant and probative of the versions of the murders contained in the taped confession.

The Court finds that the admission into evidence of petitioner's sexual activities with his daughter was proper and fundamentally fair. Therefore, this claim for relief must be denied.

## V. DENIAL OF CHRISTOPHER'S MOTIONS FOR SODIUM PENTOTHAL AND POLYGRAPH TESTS

The next issue raised by petitioner is that the trial court erred by not requiring the State to pay the cost of a sodium pentothal test and in granting of the prosecution's motion to preclude the admission of polygraph test results allegedly favorable to petitioner, denied petitioner his right to a fair trial, in violation of the Sixth and Fourteenth Amendments.

In essence, petitioner contends that the rulings of the trial judge may have denied him the possibility of evidence concerning the voluntariness of petitioner's confession and his guilt or innocence and that denial of the admissibility of polygraph results at the trial phase, without a showing of any reason other than the unreliability of the results, denied the petitioner effective assistance of counsel.

The Florida Supreme Court in *Christopher v. State, supra* at 202, considered these claims of petitioner and found the actions of the trial judge were proper. This Court now considers whether the trial court's evidentiary rulings were fundamentally fair.

At the motion hearing in which the rulings in question were made, the trial judge made the following findings:

The Court: All right. The Court is of the opinion that sodium pentothal comes under the same rules as polygraph examination. It's not admissible. The only time it is admissible in the trial is when both sides would agree to it being considered by a jury.

Due to the fact that it's not admissible, it's not material to the trial, and the Court is not going to require the county to pay for such an examination knowing in advance that it's not going to be admitted at the trial. Therefore, the Court is going to deny your motion.

Now this is not to say if you do want to make a proffer you may not do so, but any funds expended on such a test will have to come from the defendant or from the public defender's office.

Now, the Court is going to deny this motion. Now, in the event that we go into a penalty phase trial, the Court will hear further from you as to how it could be presented for the Court to make a decision in the case. (R. 1159, 1160).

In view of the Florida Supreme Court's pronouncements in *Knight v. State*, 97 So.2d 115, 118 (Fla.1957) which the Court cites with approval in *Christopher v. State, supra* at 201, 202, it is clear that the highest court in Florida considered the results of "truth serum" to be so subject to variables as to be unreliable and possibly even self-serving. The record shows despite the trial judge's finding that he would "hear

further" from defense as to the test results at the penalty phase, the petitioner never proffered the results at that time.

If petitioner had proffered the results of the sodium pentothal test at the penalty phase, when rules of admissibility are relaxed (F.S. 921.141(1)) such evidence would only be cumulative evidence as to the voluntariness of petitioner's confession or his innocence and guilt. In view of the cumulative nature of the sodium pentothal test *if* taken and *if* proffered, this Court finds petitioner's claim of constitutional deprivation to be clearly without merit.

With respect to petitioner's claim of prejudice for failure to admit polygraph results in evidence, the Florida Supreme Court has repeatedly stated that the results of a polygraph test are not admissible in evidence. *Sullivan v. State*, 303 So.2d 632 (Fla.1974); *Anderson v. State*, 241 So.2d 390 (Fla. 1970); *Kaminski v. State*, 63 So.2d 339 (Fla.1952).

At the penalty proceeding, the record shows that the trial judge was willing to receive a proffer of results of the polygraph test in mitigation. It is clear however that the petitioner never attempted to proffer the polygraph results. Petitioner's claims do not reach constitutional dimension and his right to a fair trial have not been abrogated. Therefore, this claim for relief must be denied.

## VI. PSYCHIATRIC EXAMINATION

■ Petitioner asserts that he was denied a constitutional right by the failure of the trial court to provide a psychiatric examination for him when his competency to assist at trial and his sanity at the time of the murders was at issue. The petitioner states that the trial court was aware of the question of the petitioner's competency because the trial court ordered that the petitioner be examined prior to the trial. The petitioner argues that the trial court erred when it failed to require the petitioner to submit to the examination after the petitioner had refused to meet with the psychiatrist. The petitioner cites several cases

for the proposition that because the petitioner's competency was in issue the trial court could not deem the petitioner's refusal to meet with a psychiatrist to be a knowing and intelligent waiver of his defense of incompetency or insanity. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1959); and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1974).

In response, the State argues that this issue is not properly before this Court because the petitioner did not raise this matter at the trial level or on direct appeal. The State cites *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for the proposition that this procedural default prevents this Court from taking cognizance of this issue. The State also notes that the petitioner has not claimed that his refusal to see a psychiatrist indicated an aberration or that had the tests been conducted they would have shown that the petitioner was insane or incompetent. He only claims that he was entitled to a psychiatric examination or hearing on his competency.

In its review of the trial court's order denying a motion to vacate, set aside, or correct sentence, the Supreme Court of Florida found that before both the first and second trial the petitioner filed a motion requesting the appointment of a psychiatrist for the purpose of determining the petitioner's competence. On each occasion appropriate orders were entered and on each occasion the defendant refused to see the psychiatrist appointed to examine him. That Court further found that while the trial Court has the responsibility to conduct a hearing for competency to stand trial whenever it reasonably appears necessary to ensure that a defendant is competent, there was nothing in the record which made it appear reasonably necessary to inquire into the competency of this defendant. The Court concluded that the trial Court did not have any responsibility to conduct a hearing on the petitioner's competence and that the defendant had waived

the defense of insanity by refusing to be examined by the psychiatrist. *Citing Parkin v. State,* 238 So.2d 817, 821 (Fla.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971).

In *Drope v. Missouri,* 420 U.S. 162 at 173–4, 95 S.Ct. 896 at 904–05, 43 L.Ed.2d 103 (1975) the United States Supreme Court explained that in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), it had only held that where the evidence raised a *bona fide* doubt as to the defendant's competence he was entitled to a hearing on that issue. Of particular importance to the *Drope* Court was the fact that the defense counsel had represented that the defendant was not a person of sound mind and should have a further psychiatric examination before trial. In the case at bar the Florida Supreme Court correctly found that there was *no* evidence in the record that the defendant was of unsound mind, and, as opposed to *Drope,* this petitioner's defense counsel stated that the issue of the defendant's competency would not be raised. Accordingly, the Court finds that there was no *bona fide* doubt raised as to the petitioner's competence so the trial Court correctly refused to hold a hearing on Christopher's competence or to impose a psychiatric examination upon the defendant over his objections. This ground of the petition is denied.

## VII. CONSTITUTIONALITY OF FLORIDA DEATH STATUTE

The next issue raised by the petitioner is the constitutionality of the Florida statute on capital punishment. The Court finds that this issue has been previously raised and decided in *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978) *cert. den.* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796, and *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and that it deserves no further discussion at this time. This ground of the petition is denied.

## VIII. *FORD V. STRICKLAND*—EX PARTE INFORMATION

▄▄ The eighth issue raised by the petitioner is whether the petitioner was denied

due process of law by the Florida Supreme Court's receipt of *ex parte* information concerning petitioner during its consideration of the petitioner's appeal to that Court. The Eleventh Circuit Court of Appeals recently considered this claim in *Ford v. Strickland,* 676 F.2d 434 (11th Cir.1982), *cert. den.* —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). That Court noted that this issue first surfaced in a petition for writ of habeas corpus directed to the Florida Supreme Court on behalf of a class of 122 death row inmates, of which Ford and Christopher were members. The *Ford* court accepted the Florida Supreme Court's statement that such material would be irrelevant to the Florida Court's ultimate decision. The *Ford* Court also noted that *ex parte* review of the records in other cases is necessarily part of the Florida Supreme Court's obligation to review for consistency and proportionality. *Ford* at 444. The Court then rejected Ford's claim because:

1. there was not an iota of evidence to indicate that the Florida Supreme Court viewed any extra-record materials in affirming the petitioner's conviction and sentence;

2. there was absolutely no indication what material could have been received by the court which was prejudicial;

3. and, in the face of petitioner's unsupported allegations to the contrary, the court accords a presumption of correctness to the Florida Supreme Court's statement that its members properly perform their procedural appellate function in reviewing death sentences.

## IX. *BRADY* ISSUE—SUPPRESSION OF EVIDENCE

▄▄ Petitioner contends that the prosecution suppressed evidence favorable to the accused in violation of the petitioner's due process rights as expressed in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the United States Supreme Court held that suppression of evidence favorable to an accused

and which was material to either the guilt or punishment of the accused was a violation of due process.

The petitioner contends that the prosecution had in its possession a tape recording made by Norma Sands that shows that she had a motive to commit the murders of George Ahern and Bertha Skillen. The petitioner further contends that the tape recording also shows her state of mind at the time of the murders and that both these matters were material to the petitioner's guilt and punishment. The Florida Supreme Court found that there was no evidence that the prosecution withheld the tape in violation of *Brady* and it also found that even if the tape had been withheld it was so cumulative of other evidence that such a withholding would have been harmless.

This court allowed the petitioner to take discovery of the state officials concerning this matter. The petitioner has failed to establish that the tape was in any way material to this case. Accordingly, this ground of the petition is denied.

## X. NEW EVIDENCE

 Petitioner asserts that he has newly discovered evidence that Norma Sands confessed to committing the murders. Mary Still the petitioner's mother, says that Norma told her that Norma shot both victims and that Christopher only learned of the murders from Norma.

The petitioner raised this issue in the Florida Supreme Court on a request for permission to apply to the trial Court for a writ of error *coram nobis*. In denying the writ, the Florida Supreme Court held that Mrs. Still's statement concerning Norma's alleged confession was known to the petitioner and his counsel prior to the trial. The Court stated that, even if that were not so, it would deny the writ because the statement could have been discovered by the exercise of due diligence. *Dobbert v. State*, 414 So.2d 518 (Fla.1982).

The Court has considered this issue in light of *Wainwright v. Goode*, —— U.S. ——, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983),

and finds that the State Court's decision to deny the petitioner a writ of error *coram nobis* is a question of state law that should not be reviewed by this Court unless the State Courts' denials reach the level of a constitutional infringement.

In denying the writ of *coram nobis* the Florida Supreme Court found that the petitioner had several opportunities to bring this alleged new evidence before the trier of fact and chose not to do so. The petitioner now attempts to explain that failure to produce this evidence at an earlier time on the theory that he was previously trying to protect his daughter. Since Mrs. Still's statement would incriminate the petitioner's daughter he would have the Court now believe that he refused to allow her to so testify at trial. While this theory is quite noble, it does not match with the course of events as we now know them to be.

In his testimony at the first trial the defendant attempted to prove this very theory; he testified that Norma had shot both of the victims. Since the petitioner was clearly not protecting Norma at that time, there could be no logical reason for not questioning Mrs. Still on the matter of the alleged confession or for not attempting to elicit this "confession" from Norma when she testified at both trials.

The Court finds that the Florida Supreme Court's application of the Florida law on writs of *coram nobis* did not violate the petitioner's constitutional rights. The Court further finds that the alleged new evidence is not material and is not such that, if presented to a jury at a new trial, it would have any likelihood of producing an acquittal. *Shuler v. Wainwright*, 341 F.Supp. 1061 (M.D.Fla.1972). Accordingly, this ground of the petition is denied.

## XI. INEFFECTIVE ASSISTANCE OF COUNSEL

 Christopher raises, as his final issue a generalized assertion that his lawyer did not render effective assistance of counsel to him, as guaranteed by the Sixth Amendment. The standard of review in

federal habeas corpus on this issue has been set forth in great clarity by Judge Frank Johnson's opinion in *Tucker v. Zant,* 724 F.2d 882, (11th Cir.1984)

> We begin our analysis of this contention with the now familiar litany of precedent setting out the standard for effective assistance. A vital corollary to the Sixth Amendment's guarantee to criminal defendants of the right to assistance of counsel is the requirement of *effective* assistance of counsel, "that is, counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances." *Washington v. Strickland,* 693 F.2d 1243, 1250 (5th Cir. Unit B 1982) (en banc, *cert. granted* [——] U.S. [——], 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). We measure counsel's performance not against the yardstick of hindsight but in the context of the circumstances as they appeared at the time. *Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir.1983). A petitioner seeking to overturn his conviction on the basis of ineffective assistance of counsel must show, by a preponderance of the evidence, that his attorney failed to meet this minimum standard. *Washington v. Strickland,* 693 F.2d at 1250. In addition, the petitioner must demonstrate that his counsel's ineffectiveness worked to his "actual and substantial detriment." Id. at 1262.

>> Whether counsel has rendered effective assistance is a mixed question of law and fact which requires the appellate court to independently apply legal principles to the district court's findings of basic common historical facts of the case.... Thus, while we must defer to the district court's finding as to what counsel did or did not do, absent a clearly erroneous determination, we independently evaluate whether counsel's representation satisfied the standards of the Sixth and Fourteenth Amendments. *Foster v. Strickland,* 707 F.2d 1339, 1342 N. 2 (11th Cir. 1983) quoting *Adams v. Balkcom,* 688 F.2d 734 (11th Cir.1982) (citation omitted).

Reviewing the record in this case against the standard set in *Zant* and *Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc), *cert. granted* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), it is clear that petitioner's claim is meritless. In point of fact, the record is clear that Christopher received exceptionally good legal representation in his case.

The Florida Supreme Court rejected petitioner's general claim of ineffective assistance of counsel and held holding that he did not meet the "... Standards established in *Knight v. State,* 394 So.2d 997 (Fla.1981)."

In this court, petitioner has not alleged any fact which, if proven, would establish ineffective assistance under the standards set forth above. Further, petitioner has not alleged facts which if proven would indicate that his counsel's actions resulted in any disadvantage to the course of his defense. At the two hearings held in this federal court, present counsel for Christopher was asked to state for the record the factual basis for his contentions and despite this court's request of the petitioner to provide this court with a proffer of evidence that might be given to prove his claims of ineffective counsel none was forthcoming. The record being devoid of any factual allegations concerning this subject, after this court repeatedly inquired as to such factual basis, the court finds that the petitioner has not met his burden of proving by a preponderance of evidence that his counsel did not render reasonably effective assistance or that such failure resulted in prejudice to the defendant. Accordingly, this ground of the petition is denied.

## CONCLUSION

All grounds for relief asserted by William D. Christopher in this petition for writ of habeas corpus have been carefully and personally considered by this judge. It is

ORDERED, ADJUDGED and DECREED that the petition for writ of habeas corpus, be and it is hereby denied. The

stay of execution heretofore entered in this case, be and it is hereby VACATED. The case dismissed.